FILED

OCT 1 8 2007

OCT 18 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEL MONTE FRESH PRODUCE, N.A., INC., <br><br> Plaintiff, <br><br> v. <br><br> CHIQUITA BRANDS INTERNATIONAL, INC., and KIM KINNAVY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

07CV 5902
JUDGE HIBBLER
MAGISTRATE JUDGE BROWN

JURY TRIAL REQUESTED

## COMPLAINT

NOW COMES the Plaintiff Del Monte Fresh Produce N.A., Inc. ("Del Monte"), by and through its attorneys, Marty Denis of Barlow, Kobata & Denis and Michael Robbins of Michael Robbins and Associates, and for its Complaint against the Defendants Chiquita Brands International, Inc. ("Chiquita"), and Kim Kinnavy ("Kinnavy") states as follows:

### NATURE OF ACTION

1.      This lawsuit arises under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, for Kinnavy's violation of the CFAA. This lawsuit also involves state law claims based on Kinnavy's breach of a non-compete agreement, breach of confidentiality and non-disclosure agreements, breach of her fiduciary duty, and for conversion. This lawsuit also involves state law claims based on Chiquita's tortious interference with contract.

### JURISDICTION AND VENUE

2.      Federal jurisdiction arises under the provisions of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and 28 U.S.C. § 1331. There is supplemental jurisdiction

over the state law claims pursuant to 28 U.S.C. § 1367.

3. The jurisdiction of this Court is also invoked based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The Plaintiff Del Monte is a citizen of Florida. The Plaintiff is incorporated in Delaware and has its principal place of business in Coral Gables, Florida. Defendant Chiquita is a citizen of Ohio. Defendant Chiquita is incorporated in New Jersey and has its principal place of business in Cincinnati, Ohio. Defendant Kinnavy resides in and is a citizen of Illinois. The amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

4. Venue lies in the Northern District of Illinois in that Plaintiff does business in this District, Defendant Chiquita does business in this District, Defendant Kinnavy resides and does business in this District, and a substantial portion of the events giving rise to these claims took place in this District. For purposes of diversity jurisdiction, venue is also proper in this judicial district pursuant to 28 U.S.C. §1391(a).

**PARTIES**

5. Plaintiff Del Monte has its principal place of business in Coral Gables, Florida, and is incorporated in Delaware.

6. Defendant Chiquita has its principal place of business in Cincinnati, Ohio, and is incorporated in New Jersey.

7. Defendant Kinnavy currently resides at 5442 N. Nagle Ave., Chicago, Illinois 60630.

**FACTUAL BACKGROUND**

8. In connection with the development of its business, Del Monte has expended substantial time, labor, and money to research and develop proprietary business methods and strategies, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, pricing methods and

2

information, logistics and transport systems, methods of tracking performance with regard to customer metrics, sales and purchase procedures, operating procedures, shipping procedures, financial information, and information regarding the relative performances of its internal departments and divisions, product information, forecasts in volume, forecasts on quality, customer negotiations, customer contact information, customer volume requirements, customer transportation requirements and customer contract expiration dates, which, singularly and collectively, constitute Del Monte's confidential information, proprietary information, and trade secrets (referred to, collectively, herein as "Confidential Information").

9.      Del Monte has taken substantial measures and exercised due diligence to prevent its Confidential Information from becoming available to persons other than those selected by it to have access to this information in order to further its business. Del Monte generally engages in the following measures to protect its Confidential Information:    confidentiality and non-disclosure agreements with employees and customers, non-competition agreements with employees, password-only access to certain networks and databases, employee restricted access to files, locked files, disclosure of information on a "need to know" basis, and restricted access to facilities.

10.     On or about October 4, 1999, Kinnavy was hired by Del Monte as a District Sales Manager. Kinnavy worked for Del Monte as a District Sales Manager at an annual salary of $80,000.00 with bonus eligibility. As a District Sales Manager, Kinnavy was responsible for handling many large sales accounts for Del Monte selling and marketing produce, including bananas, pineapples, and melons for Del Monte. As a District Sales Manager Kinnavy was provided access to and utilized Del Monte's Confidential Information.    Kinnavy became very knowledgeable about unique and competitively valuable Confidential Information, which she utilized to sell and market

3

produce to Del Monte's customers, including, but not limited to, wholesalers, grocery store chains, and food club stores, in Del Monte's Central Region, which includes approximately twelve states.

11.     When she resigned from employment from Del Monte on May 15, 2007, Kinnavy was responsible for approximately twenty-one (21) banana supply contracts. Many of those banana supply contracts had expiration dates after May 15, 2007 or in 2008.

12.     For approximately thirty (30) years, Horton, a wholesaler, which is located in Louisville, Kentucky, had been a customer of Del Monte and had regularly renewed its yearly contract to purchase bananas from Del Monte.  Kinnavy was responsible for the Horton account.  In approximately December 2006, Horton refused to renew its contract with Del Monte.  Horton informed Del Monte that Kinnavy had failed to timely provide it with a proposed contract and because of that latter reason was not renewing its contract with Del Monte, but, rather, was contracting with Chiquita for bananas.

13.     On March 6, 2007, Kinnavy informed Del Monte that Spartan, which is a grocery store chain and which is located in Grand Rapids, Michigan and which had been a customer of Del Monte for approximately the prior ten (10) years, was no longer going to contract with Del Monte, and, instead, was contracting with Chiquita for bananas. Within days of learning that Spartan was switching to Chiquita, in March 2007 Mark Gagnon, Chiquita's Director of Sales, contacted Kinnavy to become a Chiquita employee.

14.     After a series of meetings with Chiquita, on or about May 3, 2007, Chiquita offered to hire Kinnavy. On May 15, 2007 Kinnavy submitted a written resignation to Del Monte.  When questioned about where she was planning to work, Kinnavy refused to disclose the identity of her new employer.  Del Monte learned that Kinnavy intended to be employed by Chiquita in Chicago, Illinois marketing, selling, and

4

soliciting to banana contract accounts for Chiquita.

15.     Upon learning that Chiquita was her new employer, Del Monte requested

that Kinnavy comply with the terms of the Exhibit A Agreement. A May 24, 2007 letter

was sent to Kinnavy advising her:

> This letter will confirm your resignation from Del Monte Fresh Produce N.A., Inc. ("Del Monte"). As you are aware, you agreed, in writing, to abide by Del Monte's policies of non-competition and non-disclosure of confidential information (the "Agreements").
>
> Please be aware that upon your resignation, the post-employment provisions of the Agreements became applicable and the twelve (12) month covenant not to compete commenced. As such, we would like to advise you not to engage in any activity that would violate the terms and conditions of your non-competition agreement, including but not limited to <u>Section III</u>. We would further advise you not to disclose confidential information (e.g., customer lists, pricing information, customer audit requirements) to any third party. In the event that you have any such written information in your possession, we request that you return it immediately. See Exhibit B.

16.     When Del Monte did not hear any response from Kinnavy, on June 5,

2007 Del Monte sent Kinnavy a follow-up letter that asked her to stop violating the

Exhibit A Agreement. That June 5, 2007 letter, in pertinent part, stated:

> On May 24, 2007, Phillip Humphries, Sr. Director, Human Resources, Americas, sent you a letter reminding you of your post employment obligations to Del Monte Fresh Produce N.A., Inc. ("Del Monte"). We are contacting you at this time because we have learned of your efforts to solicit the clients with whom you dealt during your employment with the Del Monte since you began employment with Del Monte's competitor, Chiquita Brands International, Inc. ("Chiquita"). As you know, the Agreement prohibits you from working for a business competitive with Del Monte for a period of twelve months following the termination of your employment for any reason. Moreover, because of your exposure to the Del Monte's confidential information and trade secrets, the Agreement provides that you shall not call on, solicit, or take away any of Del Monte's customers [sic] the termination of your employment. Obviously, your current employment, as well as your attempts to contact and solicit Del Monte's customers, constitutes a breach of your promises under the Agreement. For your information, [sic] have advised Chiquita of the existence of the Agreement and enclose a copy of our notice letter for your files.
>
> Accordingly, you are directed to CEASE and DESIST from contacting, soliciting, or attempting to take away Del Monte's customers. Please provide us with the assurance that you intend to abide by the terms of the Agreement by signing below and returning a signed copy of this correspondence. Should you fail to do

5

so, we shall file suit on behalf of Del Monte to compel you to honor the terms of the Agreement. If we are forced to initiate litigation to obtain your compliance, Del Monte shall seek to enforce the Agreement to the fullest extent, which may well include enjoining you from employment with Chiquita Brands International, Inc. If we do not receive your written assurance of compliance by June 8, 2007, we will assume that you do not intend to honor the Agreement and we will proceed accordingly. See Exhibit C.

17.    Del Monte did not receive any response from Kinnavy to its May 24 or June 5, 2007 letters to Kinnavy. Instead, Del Monte received an undated letter from Chiquita on approximately June 13, 2007. Follow-up letters were exchanged with Chiquita on July 17 and 20, 2007 (see Exhibits D, E, and F). Despite Del Monte's good faith efforts to obtain Kinnavy's compliance with the Agreement, a response from Kinnavy was never received.

18.    In the interim, on approximately June 7, 2007, Kinnavy called Rick Cooper, the Regional Vice-President for the Central Region and the person to whom Kinnavy had previously reported at Del Monte. Kinnavy told Cooper that:

a.    She had just finished her training at Chiquita;

b.    She had terminated her employment with Del Monte and obtained employment with Chiquita because Chiquita needed someone like Kinnavy to handle the Spartan account;

c.    Chiquita hired her to handle the Spartan accounts of the world.

d.    Chiquita hired her to handle contract or program accounts like Kinnavy had previously handled at Del Monte; and

e.    She was handling program and contractual accounts for Chiquita.

19.    In consideration of her continued employment and a raise in her salary by Del Monte, Kinnavy signed an Agreement dated April 20, 2004. A copy of that Agreement is attached hereto as Exhibit "A" and incorporated herein by reference, and referred to as the Exhibit A Agreement. Kinnavy received the following consideration in

6

return for signing the Exhibit A Agreement:

        a.      In January 2004, Kinnavy was given a pay raise from $61,267 to

$67,000;

        b.      In April 2004, an additional pay raise to $72,000 was given to her.

20.     Pursuant to the terms of that Exhibit A Agreement, Kinnavy agreed that

she would not work for any competitor of Del Monte for a period of twelve months from

the date of termination of her employment under certain circumstances.

21.     Section III of that Exhibit A Agreement provides the following:

The Employee acknowledges that it would be impossible, after engaging in the Business as the Company's employee and being exposed to the Proprietary Items, to work for any business which competes with the Company in the Business without using Proprietary Items or information contained therein, business contacts acquired through the Company, or expertise acquired through the Company. The Employee therefore agrees that, during the period of Employee's employment by the Company and for a period of twelve (12) months from the Employee's separation from the employment with the Company, the Employee shall not be employed by, own, manage, operate, join, control, or participate in the ownership, management, operation or control of, or be connected in any matter with, any business which represents, distributes, sells or brokers fresh vegetables, fresh fruit, and other fresh produce products: (a) to any person who or entity which is a customer of the Company on the date of termination of the Employee's employment by the Company or during the twelve (12) month period prior thereto; or (b) on behalf of or supplied by any person who or entity which is a supplier of the Company at the date of termination of the Employee's employment or during the twelve (12) month period prior thereto. The Employee shall be deemed to be connected with such a business in the business is carried on by a partnership in which Employee is a general or limited partner, employee, consultant, or agent, or a sole proprietorship, Company or association of which the Employee is a shareholder, officer, employee, member, owner, consultant, or agent; provided that nothing herein shall prevent the purchase or ownership by the Employee of any class of shares of a publicly held Company. Notwithstanding the foregoing, the covenant of non-competition set forth in this paragraph shall not apply if: (a) the Company terminates Employee's employment without cause and (b) the Employee executes the Company's standard severance agreement in effect at the time of such at-will termination.

22.     The restrictive covenant at issue is set forth in a writing signed by

Kinnavy and against whom enforcement is sought. The restrictive covenant provides that

Florida law governs. Section IV(d) of the Exhibit A Agreement provides:

This Policy shall in all respects be subject to, and governed by, the laws of the State of Florida, without regard to its conflict of laws principles.

A copy of Section 542.355 of the Florida statute is attached as Exhibit "G".

23. Del Monte had a legitimate business interest justifying the restrictive covenant. Within the meaning of Florida's statute, the legitimate business interest that Del Monte had included and involved:

    a.    Trade secrets, as defined in s. 688.002(4) of the Florida Statutes.

    b.    Valuable confidential business or professional information that otherwise does not qualify as trade secrets.

    c.    Substantial relationships with specific prospective or existing customers, patients, or clients.

    d.    Customer, patient, or client goodwill associated with:

        (1)    An ongoing business or professional practice, by way of trade name, trade mark, service mark, or "trade dress;"

        (2)    A specific geographic location; or

        (3)    A specific marketing or trade area.

    e.    Extraordinary or specialized training.

24. The restrictive covenant is reasonably necessary to protect the legitimate business interest or interests justifying the restrictions.

25. Del Monte's information regarding customer contacts, pricing information, and business plans for its customers constitute a protectible property interest.

26. Chiquita is a direct competitor of Del Monte selling and marketing produce, including bananas, pineapples, and melons.

8

27. As expressly acknowledged by Kinnavy, the Exhibit A Agreement is reasonably necessary to protect Del Monte's Confidential Information and Proprietary Items. Under Section I(a) in the Exhibit A Agreement, Kinnavy agreed

"it would be impossible, after engaging in the Business as the Company's employee and being exposed to the Proprietary Items, to work for any business which competes with the Company in the Business without using Proprietary Items or information contained therein, business contacts acquired through the Company, or expertise acquired through the Company."

28. In exchange for Kinnavy's agreement not to disclose Del Monte's Confidential Information, Del Monte granted Kinnavy access to its Confidential Information.

29. Section II(c) of the Exhibit A Agreement states the following:

(c) Nondisclosure During the Employee's employment by the Company and thereafter, the Employee shall not copy, disclose, or use any Proprietary Items, whether or not developed by the Employee, except as required for performance of the Employee's duties on behalf of the Company. The Employee shall comply with all reasonable procedures or requests of the Company to protect the confidentiality of or perfect the Company's title in the Proprietary Items.

30. Examples of "Proprietary Items" listed in Section II(a) of the Exhibit A Agreement include the following: "sales, purchasing, transportation, documentation, marketing and trading techniques, information and materials, customer and supplier lists or information, correspondence, records, financial information, pricing information, computer systems, computer software applications, business plans, documentation, and other information which is confidential and proprietary."

31. Pursuant to the Exhibit A Agreement, Kinnavy agreed that she would not disclose Del Monte's Proprietary Items "during [her] employment by the company and thereafter. See Exhibit "A," § II(c) (emphasis in original). Further, under Section III of

9

the Exhibit A Agreement, Kinnavy agreed not to "suggest or encourage" Plaintiff's customers to "curtail, reduce, or cancel" their relationship with Del Monte.

32.    Despite her contractual obligations not to compete with Del Monte or to disclose the Confidential Information and Proprietary Items, on May 3, 2007, the same day she received an offer letter from Chiquita, Kinnavy e-mailed to herself at her yahoo.com account the following Del Monte documents and the following Confidential Information and Proprietary Items:

        a.    Fuel Surcharge letter: Rick's Group;
        b.    Revised Royal;
        c.    Contract Renewals; and
        d.    Pineapple update.

Kinnavy's e-mailing, use, and transmission of these documents and this Confidential Information and Proprietary Items was unauthorized.

33.    On May 8, 2007, prior to her resignation from Del Monte, and after her receipt of the May 3rd offer letter from Chiquita, Kinnavy e-mailed to herself at her yahoo.com account the following Del Monte documents and the following Confidential Information and Proprietary Items:

        a.    Phone list;
        b.    North America Customer Database 2005.xls;
        c.    Fax List – old machine.xls;
        d.    Fax List – III-6-06; and
        e.    CUSTMAST.xls.

Kinnavy's e-mailing, use, and transmission of these documents and this Confidential Information and Proprietary Items were unauthorized.

34.    The documents Kinnavy e-mailed to her yahoo.com account contained Confidential Information and Proprietary Items, including Del Monte's customer lists, customer contacts, fax, and phone numbers, customer contract expiration and pricing information, and customer inventory and shipping requirements.

35.    Prior to becoming a Chiquita employee and while a Chiquita employee,

10

Kinnavy used Del Monte's Confidential Information and Proprietary Items to contact and solicit Del Monte customers in violation of the Exhibit A Agreement.

36.     On June 18, 2007, Kinnavy sent several documents involving Confidential Information, and Proprietary Items, including the "Phone list" and "Fax List – old machine.xls," via e-mail to Mike Elsen, a third-party and a former Del Monte employee living in Arizona. Kinnavy's e-mailing, use, and transmission of these documents and this Confidential Information and Proprietary Items were unauthorized.

37.     Kinnavy used Del Monte's Confidential Information and Proprietary Items to sell and market produce to the same clients on behalf of Chiquita that she serviced while employed by Del Monte during the twelve month period prior to her May 15, 2007 resignation.

38.     At all times relevant hereto, Kinnavy was aware that Del Monte's Confidential Information and Proprietary Items regarding customer contacts, pricing information, and strategic plans were kept in a strictly confidential manner by Del Monte and were not generally available to the public.

### COUNT I

### (CHIQUITA BRANDS INTERNATIONAL, INC.)

### TORTIOUS INTERFERENCE WITH CONTRACT

39.     Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

40.     Valuable consideration was given for the Exhibit A Agreement, including Kinnavy's continued employment with Del Monte and a raise in her salary. The Exhibit A Agreement is a valid and enforceable contract. Del Monte has performed all of its obligations to Kinnavy under the Exhibit A Agreement.

41.     Before hiring Kinnavy, Chiquita knew that Del Monte had an existing

11

contractual relationship with Kinnavy. Chiquita knew that Del Monte had a valid and enforceable non-compete agreement involving the Exhibit A Agreement. Chiquita received a copy of the Exhibit A Agreement from Kinnavy and reviewed that Exhibit A Agreement.

42. Chiquita hired and continued to employ Kinnavy in a sales and marketing position, in which she would violate the Exhibit A Agreement, despite its knowledge of that Exhibit A Agreement.

43. In disregard of the Exhibit A Agreement, Chiquita intentionally and unjustifiably interfered with Del Monte's contract with Kinnavy and Chiquita caused and induced Kinnavy to breach the Exhibit A Agreement. Chiquita intentionally interfered with Del Monte's contractual relationship for its own benefit and to Del Monte's detriment. Chiquita's conduct was intentional, wrongful, and without any business or legal justification

44. Del Monte has been damaged by Chiquita's intentional and wrongful conduct. Chiquita's wrongful interference has proximately caused Del Monte to suffer damages.

WHEREFORE Del Monte respectfully requests this Court to enter an order as follows:

a. Award Del Monte compensatory damages in an amount to be proven at trial;

b. Award Del Monte punitive damages in an amount sufficient to punish Chiquita and to deter Chiquita from continuing its conduct; and

c. Award such other and further relief as is just and appropriate.

12

## COUNT II

### (KIM KINNAVY)

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

45. Del Monte re-alleges Paragraphs 1 through 44 as though set forth fully herein.

46. There has at all pertinent times been in effect a federal statute known as the "Computer Fraud and Abuse Act," 18 U.S.C. § 1030 ("CFAA"). The CFAA provides a civil remedy in the form of a suit for recovery of economic damages and injunctive relief against a person who breaches the CFAA.

47. Kinnavy owed Del Monte a duty not to breach the CFAA.

48. Kinnavy violated the CFAA when she intentionally and without authorization accessed Del Monte's computer system and e-mailed to her personal yahoo.com account and to Mike Elsen documents containing Confidential Information for the purpose of misappropriating the information contained therein.

49. As a result of Kinnavy's conduct, Del Monte has been damaged. Kinnavy acted recklessly and engaged in conduct that caused Del Monte damages in violation of the CFAA.

WHEREFORE, Plaintiff Del Monte prays that this Court enter an order:

a. Enjoining Kinnavy's violation of the CFAA.

b. Awarding Del Monte compensatory damages including the actual loss caused by the violation in an amount to be proved at trial;

c. Enjoining and restraining Kinnavy, and anyone in active concert with her, from disclosing, copying, or using all Del Monte Confidential Information and Proprietary Items, including Del Monte's customer and pricing documents, and directing Kinnavy to return immediately to Del Monte all Del Monte property, documents, and

information;

    d.     Ordering Kinnavy to return to Del Monte all computer files, contact lists, customer information, sales data, marketing data, Confidential Information and Proprietary Items that she copied, saved, printed, emailed, or otherwise retained;

    e.     Requiring Kinnavy, and anyone in active concert with her, to disgorge any and all profits which she may have earned or received as a result of any activity violative of the CFAA and directing that such profits be turned over to Del Monte;

    f.     Order an accounting of all monies and other benefits Kinnavy has derived, directly or indirectly, from her violation of the CFAA;

    g.     Awarding Del Monte its attorneys' fees and costs incurred in this action; and

    h.     For such other and further relief as the Court deems necessary and just.

## COUNT III

### (KIM KINNAVY)

### BREACH OF EMPLOYMENT CONTRACT

50.    Del Monte re-alleges Paragraphs 1 through 49 as though set forth fully herein.

51.    After her resignation from Del Monte, by using the Confidential Information and Proprietary Items she took from Del Monte, Kinnavy solicited and attempted to induce Del Monte's customers to purchase products competitive with those made and sold by Del Monte from other sources in violation of her Del Monte Exhibit A Agreement.

52.    The activities of Kinnavy in soliciting Del Monte's customers constitutes a

knowing and willful breach of the covenant not to compete contained in Section III of her Exhibit A Agreement.

53.     The covenant not to compete contained in Section III of the Exhibit A Agreement is reasonable in geographic scope and duration.

54.     Del Monte has a protectible interest in preventing Kinnavy, its former District Sales Manager, from soliciting Del Monte's customers.

55.     At all relevant times herein, Del Monte has taken great efforts to protect its interest by having Kinnavy sign its agreement.

56.     Del Monte also has a protectible interest in preventing Kinnavy from using information contained in its customer and pricing documents, which Del Monte has expended considerable time, effort, and resources to develop.

57.     Del Monte has established customer relationships based on repeat business.

58.     But for her employment with Del Monte, Kinnavy did not have access to these customers and pricing documents and other confidential and proprietary information.

59.     Kinnavy knowingly and voluntarily agreed to enter into the Exhibit A Agreement she signed and to abide by the terms of that Exhibit A Agreement.

60.     Kinnavy has breached that Exhibit A Agreement. Kinnavy's breach of her Agreement has caused, and will continue to cause, irreparable harm and injury to Del Monte, including the loss or potential loss of business, customers, confidential and proprietary information, strained customer relationships, and good will, for which there is no adequate remedy at law. Kinnavy's continued and further breaches of that Exhibit A Agreement will cause Del Monte to suffer further lost business and erosion of customer relationships.

15

61.     The issuance of injunctive relief is necessary and appropriate to avoid irreparable harm to Del Monte, will not unduly burden Kinnavy, and will not be inconsistent with the public interest.

62.     Del Monte has no adequate remedy at law and will suffer irreparable injury if Kinnavy is not enjoined from further breaches of her Exhibit A Agreement. Del Monte is entitled to injunctive relief to prevent any further breaches of the Exhibit A Agreement.

63.     Kinnavy's conduct, described in the preceding paragraphs of this Complaint, constitutes a breach of the Exhibit A Agreement. As a result of her breach, Del Monte has been damaged.

64.     This breach of contract by Kinnavy has been willful and intentional and has caused and, unless enjoined, will continue to cause irreparable harm for which there exists no adequate remedy at law.

WHEREFORE, Plaintiff Del Monte prays that this Court enter an order:

a.     Enjoining Kinnavy from breaching the Exhibit A Agreement;

b.     Enjoining and restraining Kinnavy, and anyone in active concert with her, from directly or indirectly soliciting or inducing customers of Del Monte from purchasing products from any other source or to withdraw or cancel their business with Del Monte for a period of twelve months or such other length of time as the Court deems fair and reasonable from the date of this Order;

c.     Requiring Kinnavy, and anyone in active concert with her, to disgorge any and all profits which she may have earned or received as a result of any activity violative of the Exhibit A Agreement and directing that such profits be turned over to Del Monte;

d.     Order an accounting of all monies and other benefits Kinnavy has

16

derived, directly or indirectly, from her breaches of the Exhibit A Agreement;

      e.    Awarding damages for her breach of the Exhibit A Agreement;

      f.    Awarding Del Monte its attorneys' fees and costs incurred in this

action; and

      g.    For such other and further relief as the Court deems necessary and

just.

## COUNT IV

### (KIM KINNAVY)

### BREACH OF THE ILLINOIS TRADE SECRETS ACT

65.    Del Monte re-alleges Paragraphs 1 through 64 as though set forth in full

herein.

66.    There has at all pertinent times been in effect in the State of Illinois an act

known as the "Illinois Trade Secrets Act," 765 ILCS 1065/1 *et seq.* (1988) (formerly

found at Ill. Rev. Stat. ch. 140, ¶ 351).

67.    The Trade Secrets Act defines "trade secrets" as:

> information, including but not limited to, technical or nontechnical data, a
> . . . compilation, program, method, technique . . . financial data, or list of
> actual or potential customers or suppliers, that:

> (1)  is sufficiently secret to derive economic value, actual or potential,
> from not being generally known to other persons who can obtain
> economic value from its disclosure or use; and

> (2) is the subject of efforts that are reasonable under the circumstances to
> maintain its secrecy or confidentiality.

68.    The Trade Secrets Act defines the term "misappropriation" as:

> (1)  acquisition of a trade secret of a person by another person who knows
> or has reason to know that the trade secret was acquired by improper
> means; or

> (2)  disclosure or use of a trade secret of a person without express or
> implied consent by another person who:

(A) used improper means to acquire knowledge of the trade secret; or

(B) at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

(I) derived from or through a person who utilized improper means to acquire it;

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

69. The Trade Secrets Act defines the term "improper means" as:

includ[ing] theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means.

70. The documents containing Confidential Information and Proprietary Items which Kinnavy has and is using constitute trade secrets within the meaning of the Act because they represent compilations or lists of actual and potential customers and contain other information regarding customers.

71. Del Monte's documents are sufficiently secret to derive economic value from, are not generally known to others, and cannot be readily ascertained from any other source.

72. Del Monte has at all times had a protectible business interest in these documents and has sought to maintain and protect its protectible interest.

73. Kinnavy misappropriated Del Monte's documents by taking these documents or improperly acquiring the information contained in the documents in breach of the obligations she owed to Del Monte to maintain the confidentiality of the

18

documents.

74. Kinnavy misappropriated Del Monte's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

75. The Trade Secrets Act empowers this Court to enjoin her misappropriation of Del Monte's trade secrets (765 ILCS 1065/3); to award damages including "both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss" (765 ILCS 1065/4); and to award Del Monte its attorneys' fees for willful and malicious misappropriation (765 ILCS 1065/5).

WHEREFORE, Plaintiff Del Monte, prays that this Court enter an order:

a. Enjoining and restraining Kinnavy, and anyone in concert with her, pursuant to the Trade Secrets Act, from disclosing, misappropriating, or using any trade secrets of Del Monte;

b. Requiring Kinnavy, and anyone in concert with her, to immediately turn over without keeping any copies of any and all Del Monte documents, customer lists, sales and marketing pricing and plans, records, or other information in her possession;

c. Awarding Del Monte compensatory damages including the actual loss by the misappropriation in an amount to be proved at trial;

d. Awarding Del Monte exemplary damages, given Kinnavy's willful and malicious conduct;

e. Awarding Del Monte its attorneys' fees and costs incurred in this action; and

f. For such other and further relief as the Court deems necessary and just.

## COUNT V

## (KIM KINNAVY)

## BREACH OF CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

76.    Del Monte re-alleges Paragraphs 1 through 75 as though set forth in full herein.

77.    In the Exhibit A Agreement Kinnavy agreed to maintain the confidentiality of certain documents and information. Section II of the Exhibit A Agreement provides, in pertinent part:

II. Confidentiality

a) **Access** In the course of the Employee's employment by the Company, the Employee may receive, be taught or otherwise have access to the following items associated with the Business (collectively and individually "Proprietary Items"): sales, purchasing, transportation, documentation, marketing and trading techniques, information and materials, customer and supplier lists or information, correspondence, records, financial information, pricing information, computer systems, computer software applications, business plans and other information which is confidential and proprietary....

b) **Ownership** The Company shall own all right, title and interest in an to all Proprietary Items which the Employee receives, conceives or develops, either alone or with others, during the Employee's employment by the Company. The Employee shall deliver all Proprietary Items to the Company upon the Company's request, and in any event upon termination of the Employee's employment with the Company. The Employee acknowledges that the Proprietary Items constitute valuable trade secrets of the Company. The Employee shall not infringe or violate any trade secret or other proprietary right of the Company related to the Business or any Proprietary Items, and shall not own, apply for or otherwise attempt to obtain, on behalf of the Employee or others, any proprietary right in any item.

c) **Nondisclosure** During the Employee's employment by the Company and thereafter, the Employee shall not copy, disclose, or use any Proprietary Items, whether or not developed by the Employee, except as required for performance of the Employee's duties on behalf of the Company. The Employee shall comply with all reasonable procedures or requests of the Company to protect the confidentiality or perfect the Company's title in Proprietary Items.

78.    Valuable consideration was given for Kinnavy's execution of the Exhibit A Agreement, including Kinnavy's continued employment with Del Monte and a raise in her salary.

79. This Exhibit A Agreement is a valid and enforceable contract. Del Monte has performed all of its obligations to Kinnavy under the Exhibit A Agreement.

80. Kinnavy breached the Exhibit A Agreement by taking and disclosing Del Monte's Proprietary Items and Confidential Information, and as a result, Del Monte has been damaged.

81. Del Monte has a protectible interest in preventing Kinnavy from copying, using, or disclosing its Proprietary Items and Confidential Information.

82. Kinnavy's conduct constitutes a breach of Section II of the Exhibit A Agreement.

83. This breach of contract by Kinnavy has been willful and intentional and has caused and, unless enjoined, will continue to cause irreparable harm for which there exists no adequate remedy at law, including the loss or potential loss of business, customers, confidential and proprietary information, strained customer relationships, and good will. In addition, her breach of contract has damaged Del Monte.

84. The issuance of injunctive relief is necessary and appropriate to avoid irreparable harm to Del Monte, will not unduly burden Kinnavy, and will not be inconsistent with the public interest.

85. Del Monte has no adequate remedy at law and will suffer irreparable injury if Kinnavy is not enjoined from further breaches of her Exhibit A Agreement.

86. Del Monte is entitled to injunctive relief to prevent any further breaches of the Exhibit A Agreement.

WHEREFORE, Plaintiff Del Monte prays that this Court enter an order:

    a. Enjoining Kinnavy from breaching the Exhibit A Agreement;

    b. Enjoining and restraining Kinnavy, and anyone in active concert with her, from disclosing, copying, or using all Del Monte Proprietary Items and

Confidential Information, including Del Monte's customer and pricing documents, and directing Kinnavy to return immediately to Del Monte all Del Monte property, documents, and information;

      c.      Ordering Kinnavy to return to Del Monte all computer files, contact lists, customer information, sales data, marketing data, and other Proprietary Items and Confidential Information that she copied, saved, printed, emailed, or otherwise retained;

      d.      Requiring Kinnavy, and anyone in active concert with her, to disgorge any and all profits which she may have earned or received as a result of any activity violative of the Exhibit A Agreement and directing that such profits be turned over to Del Monte;

      e.      Order an accounting of all monies and other benefits Kinnavy has derived, directly or indirectly, from her breaches of this Exhibit A Agreement;

      f.      Awarding damages for her breach of this Exhibit A Agreement;

      g.      Awarding Del Monte its attorneys' fees and costs incurred in this action; and

      h.      For such other and further relief as the Court deems necessary and just.

## COUNT VI

## (KIM KINNAVY)

### CONVERSION

87.      Del Monte re-alleges Paragraphs 1 through 86 as though set forth in full herein.

88.      In taking documents containing Del Monte's Proprietary Items and Confidential Information, Kinnavy converted to her own use the Proprietary Items and

Confidential Information lawfully owned and possessed by Del Monte.

89.     Del Monte has an unconditional right to the immediate possession of its Proprietary Items and Confidential Information, which includes customer and supplier lists and information such as that contained in the documents Kinnavy took.

90.     Kinnavy wrongfully and without authorization assumed control, dominion, or ownership over Del Monte's Proprietary Items and Confidential Information and in doing so acted in willful and callous disregard of Del Monte's rights.

91.     Despite Del Monte's request for return of its Proprietary Items and Confidential Information, Kinnavy has remained in possession of this information and these documents. Her continued possession of this Confidential Information and Proprietary Items constitutes exercise of control over the property and is inconsistent with Del Monte's right to full possession thereof.

92.     Kinnavy willfully, maliciously and in bad faith, took Del Monte's Confidential Information and Proprietary Items and used this information to solicit Del Monte customers.

93.     Kinnavy's refusal to return Del Monte's Confidential Information and Proprietary Items has caused Del Monte damages.

WHEREFORE, Plaintiff Del Monte, prays that this Court enter an order:

a.     Enjoining and restraining Kinnavy, and anyone in concert with her, from disclosing, misappropriating, or using any of Del Monte's Confidential Information and Proprietary Items;

b.     Requiring Kinnavy, and anyone in concert with her, to immediately turn over without keeping any copies of any and all Del Monte documents, customer lists, sales and marketing pricing and plans, records, or other information in her possession;

    c.      Awarding Del Monte compensatory damages;

    d.      Awarding Del Monte exemplary damages;

    e.      Awarding Del Monte its attorneys' fees and costs incurred in this action; and

    f.      For such other and further relief as the Court deems necessary and just.

## COUNT VII

## (KIM KINNAVY)

### BREACH OF FIDUCIARY DUTY

94.    Del Monte re-alleges Paragraphs 1 through 93 as though set forth in full herein.

95.    As a District Sales Manager for Del Monte, Kinnavy owed the highest duties of loyalty, honesty, candor, rectitude, care, and good faith to Del Monte.

96.    By taking and disclosing Del Monte's Confidential Information and Proprietary Items, and by using this information to contact and solicit Del Monte customers, Kinnavy has breached these duties.

97.    As a result of Kinnavy's breach of her fiduciary duties, Del Monte has been damaged.

WHEREFORE, Plaintiff Del Monte, prays that this Court enter an order:

    a.      Ordering Kinnavy to disgorge and forfeit any and all compensation paid to her while she was in breach of her fiduciary duties to Del Monte; and award any and all other relief that this Court deems necessary and just;

    b.      Enjoining and restraining Kinnavy, and anyone in concert with her, from disclosing, misappropriating, or using any of Del Monte's Confidential Information and Proprietary Items;

c. Requiring Kinnavy, and anyone in concert with her, to immediately turn over without keeping any copies of any and all Del Monte documents, customer lists, sales and marketing pricing and plans, records, or other information in her possession;

d. Awarding Del Monte compensatory damages;

e. Awarding Del Monte exemplary damages;

f. Awarding Del Monte its attorneys' fees and costs incurred in this action; and

g. For such other and further relief as the Court deems necessary and just.

Respectfully submitted,

DEL MONTE FRESH PRODUCE, N.A., INC.

DATED: October 18, 2007

_____
One of its Attorneys

Marty Denis
BARLOW, KOBATA & DENIS
525 W. Monroe, Suite 2360
Chicago, Illinois 60661
(312) 648-5570

Michael D. Robbins
Michael Robbins and Associates
150 North Wacker Drive, Suite 2460
Chicago, Illinois 60606
(312) 889-8000
(312) 781-9123 (fax)

*Attorneys for Plaintiff Del Monte Fresh Produce N.A., Inc.*

## JURY TRIAL DEMAND

A jury trial is requested on all causes of action triable by jury.

25

# EXHIBIT A

Annex F

## POLICY OF TRADE SECRET AND NON-COMPETITION

It is the policy of Fresh Del Monte Inc. to strictly observe the following requirements with respect to maintaining trade secret information and noncompetition.

This policy is applicable to employees at all locations owned, leased, managed or operated by Fresh Del Monte Produce Inc. and all its subsidiaries (collectively, the "Company").

**I.    Acknowledgments Regarding Confidentiality and Non-competition**

**a)    Relationships**   The Company has developed and will develop relationships with customers, suppliers and shippers, and a reputation in the fresh vegetables, fruit and other produce and trading industries, which are and will become of great importance and value to the Company in connection with its business of purchasing and selling fresh vegetables, fruit and other produce on behalf of its customers (the "Business") and the loss of or injury to which will result in substantial and irreparable damage to the Company.

**b)    Restrictions**   For the reason stated in paragraph a, reasonable restrictions on the Employee regarding confidentiality and noncompetition are necessary for the protection of the Company and the Business.

**c)    Consideration** _____ (the "Employee") hereby agrees that the Employee's compensation constitutes full and adequate consideration for compliance with the Policy of Trade Secret and Noncompetition (the "Policy").

**II.    Confidentiality**

**a)    Access**   In the course of the Employee's employment by the Company, the Employee may receive, be taught or otherwise have access to the following items associated with the Business (collectively and individually "Proprietary Items"): sales, purchasing, transportation, documentation, marketing and trading techniques, information and materials, customer and supplier lists or information, correspondence, records, financial information, pricing information, computer systems, computer software applications, business plans and other information which is confidential and proprietary.  Proprietary Items do not include data or information that was:  (a) known or owned by the Employee prior to the Employee's employment by the Company; or (b) acquired by the Employee from a third party or independently developed by the Employee other than in the course of or as a result of the Employee's employment by the Company.

**b)    Ownership**   The Company shall own all right, title and interest in and to all Proprietary Items which the Employee receives, conceives or develops, either alone or with others, during the Employee's employment by the Company.  The Employee shall deliver all Proprietary Items to the Company upon the Company's request, and in any event upon termination of the Employee's employment by the Company.  The Employee acknowledges that the Proprietary Items constitute valuable trade secrets of the Company.  The Employee shall not infringe or violate any trade secret or other proprietary right of the Company related to the Business or any Proprietary Items, and shall not own, apply for or otherwise attempt to obtain, on behalf of the Employee or others, any proprietary right in any Proprietary Item.

c)     <u>Nondisclosure</u>  During the Employee's employment by the Company <u>and thereafter</u>, the Employee shall not copy, disclose, or use any Proprietary Items, whether or not developed by the Employee, except as required for performance of the Employee's duties on behalf of the Company.  The Employee shall comply with all reasonable procedures or requests of the Company to protect the confidentiality of or perfect the Company's title in the Proprietary Items.

d)     <u>Nondisclosure – Related Companies</u>  From time to time, the Company may enter into relationships with other Companies, joint ventures, partnerships, or other such types of cooperative business ventures having some element of common shareholder ownership or management.  Such arrangements are deemed to be arrangements with Related Companies.  For purposes of this paragraph 2d, Proprietary Items are defined to include those items listed in paragraph 2a above which are associated with the Company and/or Related Companies.  During the Employee's employment by the Company <u>and thereafter</u>, the Employee shall not copy, disclose, or use any Proprietary Items, whether or not developed by the Employee, except as required for performance of the Employee's duties on behalf of the Company or any Related Companies.  The Employee shall comply with all reasonable procedures or requests of the Company or any Related Companies to protect the confidentiality of or to perfect the Company's title, or any Related Company's title, in the Proprietary Items.

## III.     Non-competition

The Employee acknowledges that it would be impossible, after engaging in the Business as the Company's employee and being exposed to the Proprietary Items, to work for any business which competes with the Company in the Business without using Proprietary Items or information contained therein, business contacts acquired through the Company, or expertise acquired through the Company.  The Employee therefore agrees that during the Employee's employment by the Company, and for a <u>period of twelve (12) months</u> from the date of Employee's separation from the employment with the Company, the Employee shall not be employed by, own, manage, operate, join, control, or participate in the ownership, management, operation or control of, or be connected in any manner with, any business which represents, distributes, sells or brokers fresh vegetables, fresh fruit, and other fresh produce products: (a) to any person who or entity which is a customer of the Company on the date of termination of the Employee's employment by the Company or during the twelve (12) month period prior thereto; or (b) on behalf of or supplied by any person who or entity which is a supplier of the Company at the date of termination of the Employee's employment or during the twelve (12) month period prior thereto.  The Employee shall be deemed to be connected with such a business in the business is carried on by a partnership in which the Employee is a general or limited partner, employee, consultant, or agent, or a sole proprietorship, Company or association of which the Employee is a shareholder, officer, director, employee, member, owner, consultant, or agent; provided that nothing herein shall prevent the purchase or ownership by the Employee of any class of shares of a publicly held Company.  <u>Notwithstanding the foregoing, the covenant of non-competition set forth in this paragraph shall not apply if: (a) the Company terminates Employee's employment without cause and (b) the Employee executes the Company's standard severance agreement in effect at the time of such at-will termination.</u>

In addition, the Employee shall not, suggest, or encourage any employee, customer, supplier or institution associated with the Company in connection with the business during the Employee's employment by the Company to curtail, reduce or cancel its employment, customer, supplier or institution associated with the Company in connection with the business during the Employee's employment by the Company to curtail, reduce or cancel its employment, customer, supplier or other relationship with the Company.

IV.     Specific Enforcement

a)      **Legal Action**  The parties hereby declare that it would be difficult, if not impossible, to measure in money the damages that shall accrue to the Company by the reason of failure of the Employee to comply with or perform any of the Employee's obligations under this Policy. Therefore, if the Company institutes any action or proceeding to specifically enforce the provisions of this Policy (by injunction or otherwise), the Employee hereby waives the claim or defense in such action that the Company has an adequate remedy at law or in damages, and shall not urge in any such action or proceeding the claim or defense that a remedy at law or in damages exists.

b)      **Review by Employee**  The Employee has carefully read all the terms of this Policy, and agrees that (i) the same are necessary for the reasonable and proper protection of the Company and the Business, (ii) each of the above provisions is essential to the Company and the Company would not furnish the Employee the consideration set forth in this Policy absent the Employee's agreement to abide by and be bound by each of the above provisions, and (iii) each of the above provisions is reasonable with respect to its scope and duration.

c)      **Interpretation**  If for any reason any provision of this Policy shall be held to be invalid or unenforceable, the same shall not affect any other portion of this Policy, and the remaining provisions shall remain in full force and effect. If the validity or unenforceability is due to the unreasonableness of the scope or duration of said provisions, they shall nevertheless be effective for such period of time, for such area and to such an extent as may be determined to be reasonable by the court.

d)      **Governing Law**  This Policy shall in all respects be subject to, and governed by, the laws of the State of Florida, without regard to its conflict of laws principles.

## CERTIFICATE OF AGREEMENT AND COMPLIANCE TO POLICY
## OF TRADE SECRET AND NONCOMPETITION

I have read and thoroughly understand the requirements of Fresh Del Monte Produce Inc. Policy of Trade Secret and Noncompetition contained in the preceding pages of this booklet. I agree to comply with all the requirements and restrictions of the Policy of Trade Secret and Noncompetition.

Signature: _____  Date: 1·20·04

Name: KIM M DUNAVY  Position: District Sales Manager

Work Location: Arlington Heights

# EXHIBIT B



Del Monte Fresh Produce Company

May 24, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Ms. Kim Kinnavy
5442 N. Nagle Ave
Chicago, IL 60630

Dear Ms. Kinnavy:

This letter will confirm your resignation from Del Monte Fresh Produce N.A., Inc. ("Del Monte"). As you are aware, you agreed, in writing, to abide by Del Monte's policies of non-competition and non-disclosure of confidential information (the "Agreements").

Please be aware that upon your resignation, the post-employment provisions of the Agreements became applicable and the twelve (12) month covenant not to compete commenced. As such, we would like to advise you not to engage in any activity that would violate the terms and conditions of your non-competition agreement, including but not limited to Section III. We would further advise you not to disclose confidential information (e.g., customer lists, pricing information, customer audit requirements) to any third party. In the event that you have any such written information in your possession, we request that you return it immediately.

While we are confident that you intend to abide by the terms and conditions of the Agreements, it is appropriate to notify you that Del Monte has a policy to vigorously enforce its rights under the Agreements. Should you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

Phillip T. Humphries
Sr. Director, Human Resources

Cc:   Jeffery S. Bailey, Associate General Counsel
      Emanuel Lazopoulous, Sr. Vice President, Sales & Product Management (N.A.)

P.O. Box 149222, Coral Gables, FL 33114-9222 Telephone (305) 520-8400 Fax (305) 520-8495

# EXHIBIT C



Del Monte Fresh Produce N.A., Inc.

June 5, 2007

direct dial.: 305.52.8155
jbailey@freshdelmonte.com

**VIA UPS**

Ms. Kim Kinnavy
5442 N. Nagle Avenue
Chicago, Illinois 60630

    Re:    Breach of Noncompetition Agreement (the "Agreement")

Dear Ms. Kinnavy:

    On May 24, 2007, Phillip Humphries, Sr. Director, Human Resources, Americas, sent you a letter reminding you of your post employment obligations to Del Monte Fresh Produce N.A., Inc. ("Del Monte"). We are contacting you at this time because we have learned of your efforts to solicit the clients with whom you dealt during your employment with the Del Monte since you began employment with Del Monte's competitor, Chiquita Brands International, Inc. ("Chiquita"). As you know, the Agreement prohibits you from working for a business competitive with Del Monte for a period of twelve months following the termination of your employment for any reason. Moreover, because of your exposure to the Del Monte's confidential information and trade secrets, the Agreement provides that you shall not call on, solicit, or take away any of Del Monte's customers the termination of your employment. Obviously, your current employment, as well as your attempts to contact and solicit Del Monte's customers, constitutes a breach of your promises under the Agreement. For your information, have advised Chiquita of the existence of the Agreement and enclose a copy of our notice letter for your files.

    Accordingly, you are directed to CEASE and DESIST from contacting, soliciting or attempting to take away Del Monte's customers. Please provide us with the assurance that you intend to abide by the terms of the Agreement by signing below and returning a signed copy of this correspondence. Should you fail to do so, we shall file suit on behalf of Del Monte to compel you to honor the terms of the Agreement. If we are forced to initiate litigation to obtain your compliance, Del Monte shall seek to enforce the Agreement to the fullest extent, which may well include enjoining you from employment with Chiquita Brands International, Inc. If we do not receive your written assurance of compliance by June 8, 2007, we will assume that you do not intend to honor the Agreement and we will proceed accordingly.

Ms. Kim Kinnavy
June 4, 2007
Page 2

If you have questions concerning this letter, you may contact me at the number listed above.

Sincerely yours,

Jeffrey S. Bailey
Associate General Counsel

AGREED:

_____

Kim Kinnavy

Enclosure

# EXHIBIT D



Jeffrey S. Bailey
Associate General Counsel
Del Monte Fresh Produce N.A., Inc.
P.O. Box 149222
Coral Gables, Florida 33114-9222

                    Re:   Kim Kinnavy

Dear Mr. Bailey:

    I am responding to your letter of June 5, 2007 to Kevin Holland regarding Chiquita's employment of Kim Kinnavy.

        First, let me assure you that Ms. Kinnavy's job responsibilities at Chiquita will not require her to have any contact with any of Del Monte's customers. Further, Ms. Kinnavy has represented to us that she does not possess any confidential and proprietary information of Del Monte. Notwithstanding that fact, Chiquita's policies expressly prohibit any employee from disclosing or utilizing any confidential and proprietary information of a previous employer.

        While Ms. Kinnavy made us aware of Del Monte's Policy of Trade Secret and Non-Competition (the "Policy"), she assured us that Del Monte would not object to her employment by Chiquita as long as she did not solicit or otherwise interfere with Del Monte's business in her region for a twelve month period. It is a condition of Ms. Kinnavy's employment with Chiquita that she refrain from doing so.

        The only conduct on the part of Ms. Kinnavy which you specify in your letter as "illegal" is the fact of her employment by Chiquita. However, in light of the above, there does not appear to be any legitimate business interest to justify prohibiting Ms. Kinnavy from employment with Chiquita in any capacity. It is evident from Del Monte's own Policy that there is no legitimate business interest in doing so, since the covenant of non-competition does not apply to all employees.

        In any event, we believe that it would be in the best interest of all involved to try and resolve Del Monte's concerns without litigation. Please give me a call at your earliest convenience to discuss.

Sincerely,

Michael A. Benn, ESQ
Global Employee Relations Manager

# EXHIBIT E



Del Monte Fresh Produce N.A., Inc.

July 17, 2007

*Team 2007*

direct dial: 305.520.8155
jbailey@freshdelmonte.com

**VIA UPS**
Michael A. Benn, Esq.
Global Employee Relations Manager
Chiquita Brands International, Inc.
250 East Fifth Street
Cincinnati, Ohio 45202

**Re:    Kim Kinnavy – Violation of Non-Competition Agreement**

Dear Mr. Benn:

It was a pleasure to speak with you this afternoon regarding Kim Kinnavy's employment with Chiquita Brands International, Inc. ("Chiquita"). As you are aware, Del Monte Fresh Produce, N.A. ("Del Monte") and Kinnavy entered into a valid and binding Trade Secret and Non-Competition Agreement (the "Agreement") during her employment restricting her, among other things, from accepting employment with a competitor for a period twelve (12) months following separation of service from Del Monte. Given that Chiquita is direct competitor of Del Monte, Ms. Kinnavy's employment with your company is a breach of her Agreement. In addition, the Agreement prohibits Kinnavy from soliciting Del Monte employees and/or customers. As you will note (see attached letter to Kinnavy, dated June 5, 2007), we are aware of several instances in which Kinnavy attempted to solicit Del Monte customers.

As I stated in our conversation, Del Monte takes these matters very seriously and can not permit Kinnavy to violate the terms of the Agreement. Del Monte has a legitimate business interest in enforcing the terms of the Agreement and it will do so with all legal methods at its disposal. As such, we request that Chiquita terminate Kinnavy's employment immediately and refrain employing her until expiration of the non-compete term of the Agreement.

I look forward to hearing from you regarding your company's position no later than Friday, July 20, 2007. In the event that we do not receive a response by this date, Del Monte will be forced to enforce its rights under the Agreement and at law.

Sincerely,

Jeffrey S. Bailey
Associate General Counsel

cc:    Kim Kinnavy, 5442 N. Nagle Avenue, Chicago, Illinois 60630
Enclosures

Dallas_1\4908135\1
40579-6 6/4/2007
P.O. Box 149222, Coral Gables, FL 33114-9222 Telephone (305) 520-8400 Fax (305) 520-8495

# EXHIBIT F

07/20/2007  4:48:16 PM



**Chiquita
Brands
International**

---

July 20, 2007

Jeffrey S. Bailey, Esq.
Associate General Counsel
Del Monte Fresh Produce N.A., Inc.
P.O. Box 149222
Coral Gables, Florida 33114-9222

RE:   Kim Kinnavy

Dear Mr. Bailey:

As you requested, I am writing in response to your correspondence of July 17, 2007. I appreciate the dialogue we have had in this matter, and I want to assure you that Chiquita takes contractual obligations, including employee non-competition obligations, very seriously and as such, we have taken full and appropriate steps to address any competitive concerns that Del Monte may have.

We have also investigated your concerns regarding Ms. Kinnavy's communication with the Del Monte customers you identified. It seems that contacts at two of those customers actually contacted her, simply for the purpose of wishing her luck at her new job. With regard to the other customers you identified, they have exclusive banana contracts with Chiquita. Ms. Kinnavy merely accepted banana orders from them during the absence of a vacationing manager.

As you can see, these communications did not involve any confidential or proprietary information, nor did they involve any type of competitive issues. Further, and as I outlined to you previously, Chiquita has expressly instructed Ms. Kinnavy not to disclose or utilize any confidential and/or proprietary information belonging to Del Monte. With these safeguards, and the additional steps we have taken, we trust that we have fully addressed any legitimate business concerns Del Monte may have.

Once again, thank you for allowing Chiquita an opportunity to work with you to resolve this issue.

Sincerely,

Michael A. Benn, Esq.
Global Employee Relations Manager

# EXHIBIT G

# Florida

**1. Is there a state statute that governs the enforceability of covenants not to compete?**

**542.335  Valid restraints of trade or commerce.—**

(1)  Notwithstanding s. 542.18 and subsection (2), enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited. In any action concerning enforcement of a restrictive covenant:

(a)  A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought.

(b)  The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more le-

gitimate business interests justifying the restrictive covenant. The term "legitimate business interest" includes, but is not limited to:

1. Trade secrets, as defined in s. 688.002(4).
2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
3. Substantial relationships with specific prospective or existing customers, patients, or clients.
4. Customer, patient, or client goodwill associated with:
   a. An ongoing business or professional practice, by way of trade name, trade mark, service mark, or "trade dress";
   b. A specific geographic location; or
   c. A specific marketing or trade area.
5. Extraordinary or specialized training.

Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.

(c) A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction. If a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests. If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.

(d) In determining the reasonableness in time of a postterm restrictive covenant not predicated upon the protection of trade secrets, a court shall apply the following rebuttable presumptions:

(1) In the case is a restrictive covenant sought to be enforced against a former employee, agent, or independent contractor, and not associated with the sale of all or a part of:
   a. The assets of a business or professional practice, or
   b. The shares of a corporation, or

  c. A partnership interest, or

  d. A limited liability company membership, or

  e. An equity interest, of any type, in a business or professional practice,

a court shall presume reasonable in time any restraint 6 months or less in duration and shall presume unreasonable any restraint more than 2 years in duration.

  (2) In the case of a restrictive covenant sought to be enforced against a former distributor, dealer, franchisee, or licensee of a trademark or service mark and not associated with the sale of all or a part of:

   a. The assets of a business or professional practice, or

   b. The shares of a corporation, or

   c. A partnership interest, or

   d. A limited liability company membership, or

   e. An equity interest, of any type, in a business or professional practice,

a court shall presume reasonable in time any restraint 1 year or less in duration and shall presume unreasonable any restraint more than 3 years in duration.

  (3) In the case of a restrictive covenant sought to be enforced against the seller of all or a part of:

   a. The assets of a business or professional practice, or

   b. The shares of a corporation, or

   c. A partnership interest, or

   d. A limited liability company membership, or

   e. An equity interest, of any type, in a business or professional practice,

a court shall presume reasonable in time any restraint 3 years or less in duration and shall presume unreasonable any restraint more than 7 years in duration.

 (e) In determining the reasonableness in time of a postterm restrictive covenant predicated upon the protection of trade secrets, a court shall presume reasonable in time any restraint of 5 years or less and shall presume unreasonable in time any restraint of more than 10 years. All such presumptions shall be rebuttable presumptions.

 (f) The court shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is a third-party beneficiary of such contract or is an assignee or successor to a party to such contract, provided:

1. In the case of a third-party beneficiary, the restrictive covenant expressly identifie[s] the person as a third-party beneficiary of the contract and expressly state[s] that the restrictive covenant [i]s intended for the benefit of such person.

2. In the case of an assignee or successor, the restrictive covenant expressly authorize[s] enforcement by a party's assignee or successor.

(g) In determining the enforceability of a restrictive covenant, a court:

1. Shall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought.

2. May consider as a defense the fact that the person seeking enforcement no longer continues in business in the area or line of business that is the subject of the action to enforce the restrictive covenant only if such discontinuance of business is not the result of a violation of the restriction.

3. Shall consider all other pertinent legal and equitable defenses.

4. Shall consider the effect of enforcement upon the public health, safety, and welfare.

(h) A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.

(i) No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint.

(j) A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of [the] restrictive covenant. No temporary

injunction shall be entered unless the person seeking enforcement of a restrictive covenant gives a proper bond, and the court shall not enforce any contractual provision waiving the requirement of an injunction bond or limiting the amount of such bond.

    (k)    In the absence of a contractual provision authorizing an award of attorneys' fees and costs to the prevailing party, a court may award attorney's fees and costs to the prevailing party in any action seeking enforcement of, or challenging the enforceability of, a restrictive covenant. A court shall not enforce any contractual provision limiting the court's authority under this section.

  (2)    Nothing in this section shall be construed or interpreted to legalize or make enforceable any restraint of trade or commerce otherwise illegal or unenforceable under the laws of the United States or of this state.

    This act shall not apply in actions determining the enforceability of restrictive covenants entered into before July 1, 1996.