## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DEL MONTE FRESH PRODUCE, N.A., INC., )
                                                 )
    Plaintiff/Counter-Defendant,           )
                                                 )
          v.                                 )
                                               )
KIM KINNAVY,                            )    No. 07 C 5902
                                               )
    Defendant/Counter-Claimant/Third-Party  )    The Honorable William J. Hibbler
    Plaintiff,                       )
                                               )
          v.                                 )
                                               )
CHIQUITA BRANDS INTERNATIONAL, INC., )
                                               )
    Third-Party Defendant/Counter-Claimant.  )

## MEMORANDUM OPINION AND ORDER

After Kinnavy left the employ of Del Monte to work for Chiquita and took some Del
Monte files with her, Del Monte filed this lawsuit against Kinnavy and Chiquita, alleging that
Kinnavy violated various employment agreements and Chiquita committed various business
torts. Since that filing, the parties to this action have engaged in vigorous and excessive pleading
and motion practice. As a result of the parties' litigious behavior, the Court must now dispose of
their motions by the bunch. Thus, the Court addresses the following motions below: Del
Monte's motion to dismiss Kinnavy's counterclaims; Del Monte's motion to strike portions of
Kinnavy's counterclaims; Kinnavy's motion to voluntarily dismiss certain of her counterclaims;
Kinnavy's application for the advancement of expenses by Chiquita; Chiquita's motion to strike
Kinnavy's application; Chiquita's motion to stay or apportion the advancement of expenses; Del

Monte's motion to dismiss Chiquita's counterclaims for contribution; and Chiquita's motion to bifurcate Kinnavy's third-party complaint.

## BACKGROUND

Kim Kinnavy worked in the Illinois office of Del Monte as district sales manager from 1999 until she resigned in 2007. As a sales manager, Kinnavy worked with customers who had banana supply contracts. Del Monte gave its sales managers, including Kinnavy, laptop computers and access to Del Monte's customer database. Two weeks before resigning, Kinnavy used her laptop to e-mail herself files with the following titles: (a) Fuel surcharge; (b) Revised royal; (c) Contract renewals; (d) Pineapple update; (e) Phone list; (f) North American Customer Database 2005; (g) Fax List-Old Machine; (h) Fax List-III-6-06; and (i) CUSTMAST.xls. Kinnavy also e-mailed a copy of the "Fax List" and the "Phone List" to Mike Elsen, a broker working in Phoenix, Arizona. Kinnavy denies she used the files for commercial purposes or that the files contained confidential information. After resigning, Kinnavy went to work for one of Del Monte's chief competitors, Chiquita.[1]

Upon learning of Kinnavy's new employment, Del Monte sued Kinnavy in the Circuit Court of Cook County. Del Monte later amended its pleadings and removed the case to this Court on the basis of both federal question and diversity jurisdiction. In its federal complaint, Del Monte included Chiquita as a defendant. The essence of Del Monte's complaint was that Kinnavy violated the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, and the Illinois Trade Secrets Act (ITSA), 765 ILCS 1065/1, *et seq.*, and breached her employment agreements by working for a competitor and keeping, using, and e-mailing confidential information. Del

---

[1] Kinnavy worked for Chiquita for approximately three months before she was terminated.

2

Monte also claimed Chiquita tortiously interfered with Del Monte's business contracts and made intentional misrepresentations.

Kinnavy and Chiquita moved for summary judgment on all claims. On March 19, 2009, the Court granted that motion as to all counts against Chiquita, and as to all but three of the counts against Kinnavy. *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 828 (N.D. Ill. 2009). Upon reconsideration, the Court reversed its decision as to one of the counts against Kinnavy on May 13, 2009. *Id.* Thus, four of Del Monte's counts against Kinnavy remain: Count V – Breach of Del Monte's IT Operations Contract; Count VIII violation of the ITSA; Count IX – Conversion; and Count X – Breach of fiduciary duty. However, since Del Monte filed its original complaint, the parties have filed a number of additional pleadings that complicate this case.

First, Kinnavy filed a class action counterclaim against Del Monte on behalf of herself and a class of Del Monte employees, seeking a declaratory judgment stating that Del Monte's non-compete clause was unenforceable, and alleging tortious interference with prospective business advantage and tortious interference with contract. Del Monte now moves to dismiss that counterclaim or to strike certain paragraphs. Kinnavy moves to voluntarily dismiss portions of the counterclaim without prejudice.

Later, Kinnavy filed an additional counterclaim against Del Monte seeking indemnification. On the same day, she filed a crossclaim for indemnification against Chiquita. However, following the Court's summary judgment ruling, Chiquita was no longer a party to the litigation. So, in response to a motion to dismiss by Chiquita, Kinnavy withdrew her crossclaim and filed a third-party complaint for indemnification against Chiquita. She also applied to the Court for an order directing Chiquita to advance her expenses. Chiquita now moves the Court to

3

bifurcate Kinnavy's third-party complaint for indemnification. It also filed a motion to strike Kinnavy's application for advancement of expenses and a motion to stay or apportion the advancement of expenses.

Finally, Chiquita filed its own counterclaims against both Kinnavy and Del Monte. The counterclaim against Kinnavy alleges a breach of fiduciary duty. The counterclaims against Del Monte are for contribution pursuant to the Illinois Joint Tortfeasor Contribution Act (JTCA), 740 ILCS 100/2; equitable contribution; and implied indemnification. Del Monte moves the Court to dismiss the counterclaims directed at Del Monte.

## DISCUSSION

### I. Kinnavy's counterclaims against Del Monte

Kinnavy filed her counterclaims against Del Monte under Florida law, seeking a declaratory judgment stating that Del Monte's non-compete clause was unenforceable, and alleging tortious interference with prospective business advantage and tortious interference with contract. However, in ruling on the summary judgment motions, the Court held that Illinois law governs this dispute, not Florida law. *Del Monte*, 616 F. Supp. 2d at 816. Moreover, the Court held that, under Illinois law, Del Monte's non-compete agreement was too broad and far-reaching to be enforceable. *Id.* at 817. Following this holding, Del Monte moved to dismiss Kinnavy's counterclaims insofar as they were based on Florida law. Insofar as Kinnavy's counterclaims might survive under Illinois law, Del Monte moves for dismissal for failure to state a claim. Should the Court decide that some of Kinnavy's claims survive under Illinois law, Del Monte also moves to strike all paragraphs referencing Florida law.

Kinnavy agrees that she may no longer bring her claims under Florida law. She also recognizes that under Illinois law, her claim for declaratory relief is moot given the Court's

4

finding that the non-compete agreement is unenforceable. Finally, Kinnavy acknowledges that under Illinois law, an action for tortious interference with a contract that is terminable at will is properly classified as a claim of intentional interference with prospective economic advantage. *See Storm & Assocs. v. Cuculich*, 298 Ill. App. 3d 1040, 1052 (Ill. App. Ct. 1998); *see also Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005). Kinnavy argues that she has in fact stated an individual claim for relief under that theory. Thus, Kinnavy agrees to dismiss of all of her claims except an individual claim under Illinois law for intentional interference with prospective economic advantage. However, she moves to voluntarily dismiss the class claims without prejudice, arguing that it is in the interests of the potential class. In response, Del Monte objects to a dismissal without prejudice and requests that the Court award Del Monte the costs and fees it incurred in defending against Kinnavy's counterclaims following the Court's March 19th order. For the reasons stated below, the Court grants Del Monte's motion to dismiss in part and denies it in part, grants Kinnavy's motion to voluntarily dismiss, denies Del Monte's requests for costs and fees, and denies Del Monte's motion to strike.

## A. Motions to dismiss

### 1. Standard of review

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Court treats well-pleaded

5

allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. Of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

## 2. Intentional interference with prospective economic advantage

To succeed in her action for intentional interference with a prospective economic advantage under Illinois law, Kinnavy must prove: (1) she had a reasonable expectancy of entering into a valid business relationship; (2) Del Monte had knowledge of that expectancy; (3) Del Monte's interference prevented Kinnavy's expectations from ripening; and (4) damages. *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) (citing *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 568 N.E.2d 870, 877-78 (1991)). Here, Kinnavy alleges that, by attempting to enforce its non-compete policy, Del Monte interfered with her employment at Chiquita and with her potential employment elsewhere after Chiquita terminated her employment. Del Monte presents four arguments for dismissal of Kinnavy's claims.

### a) Causation

First, Del Monte argues that Kinnavy has failed to properly allege causation. In other words, Del Monte argues that Kinnavy has not alleged that its actions prevented her expectations from ripening. In order to succeed on her claims of interference with her employment with Chiquita, Kinnavy must show that Del Monte's actions caused Chiquita to fire her. *Ali*, 481 F.3d at 945 (citing *Fellhauer*) (in case alleging third party interference with employment relationship, third party liable "only when the actions of [the] third party cause an employer to decide to fire an at-will employee"). However, in order to survive a motion to dismiss, Kinnavy need only provide Del Monte with notice of her claim by pleading facts that support a plausible claim for relief. *See Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009). Kinnavy alleges that Del Monte sent a letters to her and Chiquita stating that Del Monte would enforce its non-competition policy "with all legal methods at its disposal" and that Del Monte

6

requested that Chiquita terminate Kinnavy's employment immediately. (Class Action Countercl. ¶ 41.) Del Monte then sued Kinnavy. Kinnavy alleges that soon thereafter, she was terminated by Chiquita. (Class Action Countercl. ¶ 42.) While Kinnavy may not explicitly allege causation, she has clearly set forth facts which support a plausible claim of causation.

Del Monte's argument that Kinnavy's counterclaim should fail because her allegations of causation are undermined by statements made by Chiquita in its pleadings and other filings are unavailing and inappropriate. Del Monte points out that in its pleadings and briefs, Chiquita claims that it terminated Kinnavy's employment based on her own misconduct, including violations of Chiquita's internal policies and procedures. Del Monte then cites *Iqbal* for the principle that the Court should consider its "judicial experience and common sense" in evaluating the plausibility of Kinnavy's claims, *see* 129 S. Ct. at 1950, and argues that the Court should therefore take Chiquita's statements into account in deciding this motion. *Iqbal* does not change what materials may be taken into account on a Rule 12(b)(6) motion to dismiss, however. The Court considers only the allegations in the relevant pleading, absent some minor exceptions not applicable here. Fed. R. Civ. P. 12(d); *see Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997) (describing the narrow exception for public records); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (describing an exception for documents referred to in the complaint and central to the claim). The Court must take all these allegations as true, and make all reasonable inferences in her favor. *Disability Rights Wisc.*, 522 F.3d at 799. Chiquita's allegations are irrelevant. Kinnavy's allegations regarding Del Monte's interference with her employment by Chiquita satisfy the third element of the tort.

7

#### b) Privilege and malice

Del Monte's second argument is that any actions it took to enforce its non-compete policy were subject to a qualified privilege, and that Kinnavy must therefore meet a higher pleading standard. Del Monte is correct that a defendant in an intentional interference case is protected by such a privilege if the defendant acts in good faith to protect an interest or uphold a duty. *Delloma v. Consol. Coal Co.*, 996 F.2d 168, 171 (7th Cir. 1993). The Court also agrees, and Kinnavy does not dispute, that a party acting to enforce a non-compete clause is acting to protect an interest. Thus, as long as Del Monte was acting in good faith in seeking to protect its interest, Kinnavy must allege that Del Monte acted with malice in order to defeat the privilege. *Id.* at 172.

Kinnavy's allegations are sufficient to support a claim of malice. In order to succeed on a claim of malice, Kinnavy must show that Del Monte acted with a direct intention to injure her or a reckless disregard for her rights and for the consequences that may result to her. *Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 668 (7th Cir. 2007) (citing *Kuwik v. Starmark Star Mktg. v. Admin.*, 156 Ill.2d 16, 619 N.E.2d 129, 135 (1993)). Kinnavy alleges that Del Monte demanded that Chiquita fire her. (Class Action Countercl. ¶ 41.) She also alleges that Del Monte made statements it knew to be false regarding the loss of certain customers in order to provide pretext for its enforcement of the policy. (Class Action Countercl. ¶ 66); *see Delloma*, 996 F.2d at 172 (defendant abuses privilege by making unjustified statements, including statements the defendant knows are false). Finally, Del Monte sued Kinnavy in an attempt to prevent her from working for Chiquita. These facts, taken as true for the purposes of this motion, clearly support a claim that Del Monte's direct intent was to put an end to Kinnavy's employment.

8

In response to Kinnavy's reliance on these allegations, Del Monte focuses on the fact that "nowhere in paragraphs 41 or 42 of Kinnavy's counterclaim," which concern Del Monte's demands that Chiquita fire Kinnavy, "is there any allegation that Del Monte acted with malice or without justification." Despite Del Monte's frequent complaints that Kinnavy's counterclaim merely recites labels and conclusions, rather than facts, this argument exposes Del Monte as the party truly concerned with labels and conclusions. Kinnavy need not use the words "malice" or "without justification" in her counterclaim in order to defeat Del Monte's motion. She need only allege facts that provide grounds for relief. As explained above, the facts she sets forth are sufficient to support a finding of malice.

Del Monte also objects to Kinnavy's reliance on the allegations concerning Del Monte's false statements because they are contained in paragraphs under Count III of her counterclaim, which is her claim for tortious interference with contract. Del Monte argues that because Kinnavy agrees to the dismissal of any such claim, and these paragraphs are not incorporated by reference into Count II, she may not rely on them. Del Monte's argument is extremely formalistic and is not based on any case law. Moreover, it ignores the fact that Kinnavy has not withdrawn all of the allegations listed under the "Count III" heading. In fact, Kinnavy has not even withdrawn Count III. She merely acknowledges that Count III is improperly titled now that the Court has decided to apply Illinois law. The Court takes all well-pleaded allegations in Kinnavy's counterclaim as true, and rejects Del Monte's argument.

### c) Specific potential employers

Del Monte's third argument is that, insofar as Kinnavy's claims involve interference with prospective employment following her termination by Chiquita, she has not alleged the existence of a reasonable expectancy or that Del Monte had knowledge of such an expectancy. Del Monte is right that Kinnavy never mentions a specific prospective employer in her counterclaim. She

9

also never specifically alleges that Del Monte knew of her prospects with a specific employer. Del Monte argues that Kinnavy must identify at least one specific employer under Illinois law. The court in *Schuler v. Abbott Labs.*, 265 Ill. App. 3d 991, 639 N.E.2d 144, 147 (Ill. App. Ct. 1993), suggests that Illinois courts do require a plaintiff (or, in this case, a counter-claimant) to do just that.

However, the federal pleading standard applies in this case rather than the more fact-intensive approach of the Illinois courts. In *Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998), the Seventh Circuit found this distinction to be significant in reference to a claim of intentional interference with prospective economic advantage, holding that a plaintiff in federal court need not identify a specific third party in order to survive a motion to dismiss such a claim. However, the *Winfrey* case was decided under a more relaxed pleading standard derived from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957). *Winfrey*, 141 F.3d at 329 (finding that plaintiff's allegations were sufficient because "he might be able to prove a set of facts [consistent with the allegations]...that would entitle him to relief"). Since then, the Court decided *Twombly*, which raised the pleading standard, requiring plaintiffs to allege "enough to raise a right to relief above the speculative level." 550 U.S. at 555, 127 S. Ct. at 1964-65. Thus, the Court must determine whether the holding in *Winfrey* still applies under the *Twombly* standard.

District courts since *Twombly* have continued to apply *Winfrey* despite the change in the pleading standard, holding that plaintiffs need not identify a specific third party or class of third parties in a complaint for intentional interference with prospective economic advantage. *See, e.g., Aspen Marketing Servs., Inc. v. Russell*, No. 09 C 2864, 2009 WL 4674061, *7 (N.D. Ill. Dec. 3, 2009); *MapQuest, Inc. v. CIVIX-DDI, LLC*, No. 08 C 1732, 2009 WL 383476, *6 (N.D.

Ill. Feb. 11, 2009) (discussing the effect of *Twombly* on the *Winfrey* precedent); *Foboha GmbH v. Gram Tech., Inc.*, No. 08 C 0969, 2008 WL 4619795, *4 (N.D. Ill. Oct. 15, 2008); *Aller-Claire, Inc. v. Amer. Textile Co.*, No. 07 C 4086, 2008 WL 4066976, *2 (N.D. Ill. Aug. 28, 2008). The Court agrees that *Twombly* does not require abandonment of the rule set forth in *Winfrey*. Even after *Twombly*, plaintiffs are not required to allege specifics. *Twombly*, 550 U.S. at 569-70, 127 S. Ct. at 1973-74. Thus, the Court rejects Del Monte's argument that any plaintiff must indentify a specific third party as a matter of law.

However, *Twombly* does require that Kinnavy set forth facts that make it plausible that she had a reasonable expectancy with prospective employers and that Del Monte knew of that expectancy. Here, Kinnavy alleges that when she left Del Monte, she began working in the same industry with Chiquita. (Class Action Countercl. ¶ 40.) She alleges that Del Monte was aware of her employment with Chiquita. (Class Action Countercl. ¶ 40.) She alleges that Del Monte demanded her termination by Chiquita and that Chiquita terminated. (Class Action Countercl. ¶¶ 41-42.) Kinnavy then alleges that other employers in the industry were reluctant to talk to her or hire her out of fear that Del Monte would sue them. (Class Action Countercl. ¶ 43.) Given that Kinnavy had in fact obtained employment in the industry following her resignation from Del Monte, this final allegation is plausible. The Court may make a reasonable inference in Kinnavy's favor at this stage of the proceedings that Kinnavy had a reasonable business expectancy with other prospective employers in the industry. In addition, given Del Monte's alleged knowledge of Kinnavy's interest in obtaining employment in the field, and her ability to obtain such employment, as well as the allegations that Del Monte sought to enforce its non-compete policy "with all legal methods at its disposal," (Class Action Countercl. ¶ 41), it is also

11

plausible that Del Monte had knowledge of Kinnavy's expectancy. Thus, the Court finds that in this case, Kinnavy need not identify a specific employer in order to state a claim.

### d) Comparable worth claims

In its opening brief, Del Monte also argues that Kinnavy's claims should be rejected because they are analogous to "comparable worth" arguments that courts rejected in cases related to the Equal Pay Act, citing cases such as *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1134 (5th Cir. 1983). The Court is uncertain whether Del Monte abandoned this argument when Kinnavy agreed to dismiss her class claims because it does not address the argument in its reply brief. Either way, the Court may easily dispose of the argument. Not only does the *Plemer* court specifically state that it is not addressing a comparable worth argument, *id.* at 1134 (plaintiff "makes no claim under the comparable worth doctrine"), but Kinnavy's arguments are not analogous to the argument in *Plemer* or any made under the doctrine.

In her Counterclaim, Kinnavy alleges that by enforcing its non-compete policy, Del Monte forced her to remain at Del Monte at a lower salary then she could have earned elsewhere. (Class Action Countercl. ¶¶ 2, 39, & 60.) Del Monte posits that by making this claim, Kinnavy is asking this court to compare different jobs and determine whether they are worth the same. Del Monte even claims that Kinnavy's counterclaim requests that the Court set a wage scale for all Del Monte employees. These claims are absurd. Kinnavy simply alleges that Del Monte attempted to prevent her from seeking or accepting employment with other employers at higher wages (such as the job she eventually accepted from Chiquita). In fact, that is generally the goal of a non-compete agreement – to restrict employees' ability to work for competitors. Kinnavy does not claim that the work she was prevented from obtaining elsewhere was of comparable worth to her job with Del Monte. Indeed, that fact would be of no relevance, because the non-competition policy at issue purported to prevent her from obtaining any employment, not just

12

employment in a position of comparable worth. All that is at issue is whether Kinnavy was potentially missing out on greater pay with some other employer. Clearly, it would not be necessary to set a wage scale for Del Monte employees in order to resolve this issue.

Unfortunately, Del Monte goes on to make all sorts of even more absurd claims about the potential effects of accepting Kinnavy's theory of liability. Del Monte argues that "Kinnavy is attempting to abrogate the well-established notion of a free market system." (Del Monte Br. p. 13.) Given the fact that this counterclaim is based on Del Monte's attempts to enforce a *non-compete* agreement that the Court has already ruled unenforceable because of its unreasonable restrictions on *competition*, Del Monte's contention is baffling. Similarly baffling is Del Monte's decision to next trot out a parade of horribles. Del Monte posits that if the Court were to allow Kinnavy's claim to proceed, the Court would effectively open the floodgates to "assorted claims of earning disparity based on a multitude of societal factors, such as schooling, race, national origin, geographic location, qualifications, and/or marital status." (Del Monte Br. p. 13.) Del Monte believes thousands of employers, including Del Monte, Chiquita, and all their competitors, would be "dragged into federal court by disgruntled employees to obtain a judicial ruling on the prevailing wage rate in that particular industry." (Del Monte Br. p. 13.) This slippery slope argument is baseless because, as the Court explains above, Del Monte is at least misunderstanding, if not misstating, Kinnavy's claims. In fact, in the future, Del Monte should take care not to slip down the slope of vigorous defense into a valley of frivolity. Thus, having rejected each of Del Monte's arguments, the Court denies Del Monte's motion to dismiss Kinnavy's individual claim of intentional interference with prospective economic advantage.

### 3. Prejudice

The Court must also decide whether the remaining claims in Kinnavy's counterclaim should be dismissed with or without prejudice. Kinnavy seeks dismissal without prejudice so

13

that the order will not prevent other class members from pressing their own claims. Del Monte objects, but provides no reason for why the unnamed class members should be prejudiced. The Court agrees with Kinnavy that dismissal without prejudice as to other class members is appropriate here. The Court never certified a class in this case, other potential class members have not had any opportunity to be heard, and the Court's decision regarding summary judgment was not binding on them. However, the Court's decision was binding on Kinnavy. Thus, the Court grants Del Monte's motion to dismiss Kinnavy's individual claims for declaratory relief and tortious interference with contract with prejudice, but denies it with regard to the class claims. Instead, the Court grants Kinnavy's motion to dismiss those claims without prejudice.

### 4. Costs and fees

The final issue related to the motions to dismiss Kinnavy's counterclaim is Del Monte's request that the Court award costs and fees to Del Monte for efforts it expended after the date of the Court's summary judgment ruling to defend the claims that are now dismissed. Del Monte asserts that it was inappropriate for Kinnavy to press those claims after the order because it rendered them moot or meritless. Del Monte makes its request pursuant to Rule 41(a)(2), which gives the Court "discretion to impose appropriate terms and conditions" upon a voluntary dismissal. Fed. R. Civ. P. 41(a)(2).

Del Monte claims that Kinnavy insisted on pursuing class action discovery and opposed its motion to dismiss even after the summary judgment order. While the Court has no evidence before it regarding Kinnavy's pursuit of discovery, it is clear that she did not oppose Del Monte's motion insofar as it relates to the claims at issue here. Instead, Kinnavy moved to voluntarily dismiss these claims. Indeed, it is for this very reason that Del Monte relies on Rule 41 in its motion. Thus, Del Monte is wrong to seek costs and fees on the briefing of its motion. In addition, even if Kinnavy did in fact seek additional discovery on the class action claims, she

did so for a relatively short period of time after the summary judgment order because she responded to Del Monte's motion, which was filed just two months after that order, by voluntarily dismissing her claims.

Moreover, a court generally does not award fees in a case where voluntary dismissal is with prejudice "because the defendant cannot be made to defend again." *Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir. 1985) (internal quotation omitted). Here, Kinnavy's individual claims are dismissed with prejudice. While Del Monte may still be subject to the costs of defending again in the future by some other class member, it would be difficult to separate out which costs and fees apply to Kinnavy's individual claims as opposed to her claims on behalf of a putative class.

Finally, the Court notes that Del Monte is by no means a prevailing party at this point in the litigation. It succeeded in getting some of Kinnavy's counterclaims dismissed only because it lost some of its own claims on summary judgment. Unfortunately, all of the parties to this action seem to be engaging in excessive pleading and motion practice that has probably driven everyone's costs and fees sky high. As detailed above, Del Monte has pressed its fair share of unfounded arguments in this very series of motions. When Kinnavy filed her counterclaim, however, she sought to invalidate a non-compete policy that the Court agrees was invalid. She sued under Florida law because Del Monte alleged that Florida law was applicable. These filings were not unfounded. Therefore, in light of the difficulty in deciding whether Del Monte actually suffered as a result of her delay in dropping those claims, the Court declines to use its discretionary powers to force Kinnavy to pay Del Monte's costs and fees.

## B. Motion to strike

Del Monte also moves to strike many allegations from Kinnavy's counterclaim, arguing that they are redundant and irrelevant. A court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). However, courts generally disfavor Rule 12(f) motions to strike because "extraneous allegations...are entirely ignorable." *Alexander v. Northeastern Ill. Univ.*, 586 F. Supp. 2d 905, 915 (N.D. Ill. 2008) (quoting *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001)). Courts will generally only strike matter if "it is clear that it can have no possible bearing on the subject matter of the litigation...and the moving party is prejudiced" by the matter. *Anderson v. Bd. of Educ. of City of Chicago*, 169 F. Supp. 2d 864, 867-68 (N.D. Ill. 2001). In fact, in *Davis*, the Seventh Circuit advised the defendant not to file a Rule 12(f) motion, noting that unless the material to be stricken was actually prejudicial, the motion might constitute harassment and would be the type of motion that gives motion practice a "deservedly bad name." 269 F.3d at 821. In order to show prejudice, Del Monte must show that the matter it wants stricken "has the effect of confusing the issues or...is so lengthy and complex that it places an undue burden on [Del Monte]." *Anderson*, 169 F. Supp. 2d at 868.

Del Monte requests that the court strike paragraphs 1, 4, 28-32, 34, 36-39, 48(d), 48(e), 48(f), 54-59, and 62, arguing that they allege violations of Florida law, and are therefore no longer relevant. Most of these paragraphs do indeed reference Florida law, which the Court has found to be inapplicable. These references are therefore no longer relevant to this case.

However, they are also not prejudicial. Del Monte argues that they are prejudicial because it will have to spend time and resources litigating these issues. Yet, given that the Court has dismissed all of Kinnavy's claims based on Florida law, the only litigating Del Monte will

16

need to do is to file an answer. Del Monte seems to believe this is prejudice enough. To the extent that these paragraphs quote Florida statutes or allege violations of Florida law, they do not state factual content, and Del Monte would therefore not be required to file much of a response to them even if these claims survived.

At least two of the paragraphs Del Monte asks the Court to strike make no reference to Florida law. Instead, paragraphs 59 and 62 simply incorporate previous paragraphs, a common drafting practice. Del Monte argues that because these paragraphs incorporate other paragraphs that do reference Florida law, the Court should strike them as well. However, regardless of whether the Court were to strike other allegations, paragraphs 59 and 62 incorporate relevant paragraphs as well, and require no response from Del Monte.

To the extent that the material in these paragraphs is factual content, it is potentially relevant to Kinnavy's remaining claim. For instance, in paragraph 39, Kinnavy alleges that Del Monte sought to enforce its non-compete agreements even though it knew that they were unenforceable. (Class Action Countercl. ¶ 39.) This allegation may be relevant to Kinnavy's claims that Del Monte's actions were not privileged. Kinnavy need not file a new counterclaim that lays out her theories and the relevant facts in a nice, neat fashion following the dismissal of some of her claims. She has laid out the relevant facts, they support a claim, and they put Del Monte on notice. Nor will the Court sort through each paragraph to determine which content is relevant. The fact is that Del Monte has not shown any real prejudice, and its complaints about mere inconvenience and incorporating paragraphs suggest that this is the sort of dilatory Rule 12(f) motion that courts find objectionable. The Court therefore denies Del Monte's motion to strike in its entirety.

## II. Kinnavy's application for advancement of expenses

Relying on Chiquita's Third Restated Certificate of Incorporation, (Chiquita Mot. to Strike Br., Ex. A (hereinafter "Certificate"), and the New Jersey Business Corporation Act, N.J. Stat. § 14A:3-5, Kinnavy applies to the Court for advancement of its expenses in defending this lawsuit. Although Chiquita did originally advance Kinnavy some of her expenses in this lawsuit, Chiquita now objects to any advancement and moves to strike Kinnavy's application. In the alternative, Chiquita requests that the Court stay any advancement or apportion it between Chiquita and Del Monte. Although Kinnavy seeks indemnification from both Chiquita and Del Monte, she does not seek advancement from Del Monte. For the reasons below, the Court denies Chiquita's motion to strike, denies Chiquita's requests for a stay, and grants both Kinnavy's application for advancement and Chiquita's request for apportionment subject to certain caveats.

### A. Chiquita's motion to strike

Chiquita filed a motion to strike Kinnavy's application on the grounds that she had not provided a written undertaking to Chiquita to repay any advancement in the event that she is not entitled to indemnification. Chiquita argues correctly that such a written undertaking is a mandatory prerequisite to advancement under the Certificate as well as under the New Jersey statute.[2] Both the Certificate and the statute allow for advances "upon receipt" of such an undertaking. (Certificate Art. 9, § 1(d)); N.J. Stat. § 14A:3-5(6). However, after Chiquita filed

---

[2] Though Chiquita's argument is correct, it is also awkward given that Chiquita previously agreed to advance Kinnavy her expenses voluntarily. Chiquita admits that it initially assumed the cost of Kinnavy's defense "voluntarily and as a professional accommodation." (Chiquita's Resp. & Counterstatement ¶ 23.) At the same time, however, Chiquita notes that it is a publicly held company, responsible to its shareholders, and that it is therefore quite reasonable that the statute forbids it from advancing expenses without a written undertaking. These positions are not easily reconcilable.

18

its motion, Kinnavy provided Chiquita with such an undertaking. Chiquita's motion is therefore denied as moot.

## B. Kinnavy's application

### 1. Standard of review

Chiquita is authorized to advance expenses to its employees by New Jersey statute. N.J. Stat. § 14A:3-5(6).[3] "Advancement is an especially important corollary to indemnification as an inducement for attracting capable individuals into corporate service." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005). Given this purpose, courts interpret indemnification rights expansively. *See, e.g., Heffernan v. Pac. Dunlop GNB Corp.*, 965 F.2d 369, 375 (7th Cir. 1992).

A court cannot determine indemnification rights until the completion of legal proceedings, and must therefore make a "limited and narrow" inquiry into advancement rights that "precludes litigation on the merits of entitlement to indemnification." *Homestore*, 888 A.2d at 211-14. The New Jersey statute allows a corporation to advance expenses to a corporate agent "as authorized by the board of directors upon receipt of an undertaking by or on behalf of the corporate agent to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified as provided in this section." N.J. Stat. § 14A:3-5(6). If a corporation fails or refuses to provide such an advancement, a court "may allow reasonable expenses to the extent authorized by, and subject to the provisions of, subsection 14A:3-5(6), if the court shall find that the corporate agent has by his pleadings or during the course of the proceeding raised genuine issues of fact or law." *Id.* at § 14A:3-5(7)(a)(ii).

---

[3] The New Jersey statute is based on an analogous Delaware statute and, in the absence of relevant New Jersey case law, the Court may look to the case law interpreting the Delaware statute for guidance. *Vergopia v. Shaker*, 191 N.J. 217, 220 & n.1, 922 A.2d 1238, 1239 (2007) (citing Del. Code tit. 8, § 145).

Kinnavy argues that the Court may therefore order advancement if she has raised genuine issues of fact or law regarding her eligibility for indemnification. The statute's language regarding the raising of genuine issues is somewhat ambiguous. The language does not make clear whether Kinnavy must raise issues of fact or law regarding her liability in the underlying proceeding, or whether she must raise issues of fact or law regarding her eligibility for indemnification. There is no case law on this particular language in the New Jersey statute, and the Delaware statute does not include similar language. *See* Del. Code tit. 8, § 145(k) (providing the Delaware Court of Chancery with exclusive jurisdiction to "summarily determine a corporation's obligation to advance expenses"). However, it would be odd for the statute to require Kinnavy to show some likelihood of success in the underlying proceeding since she need not ultimately succeed in order to be eligible for indemnification. N.J. Stat. § 14A:3-5(2). Thus, in the absence of guidance from the New Jersey courts or any argument on this point by Chiquita, the Court accepts Kinnavy's contention that she is required to raise genuine issues regarding her eligibility for indemnification before the Court may award advancement under the statute. Setting a relatively low standard makes sense given the tendency to interpret indemnification rights expansively.

The Certificate provides that Chiquita's indemnitees[4] "shall be indemnified and held harmless by [Chiquita] to the fullest extent not prohibited by" the statute. (Certificate Art. 9, § 1(c).) It also provides that this right to indemnification "shall include the right to be paid by [Chiquita] the Expenses incurred in connection with any Proceeding in advance of the final disposition of such Proceeding." (Certificate Art. 9, § 1(d).) Therefore, since the Court *may* award Kinnavy advancement under the statute if she meets the burden established above,

---

[4] For the purposes of this motion alone, Chiquita concedes that Kinnavy is an "indemnitee" under the Certificate.

20

Chiquita, by the terms of its certificate, *must* advance her expenses under the same circumstances.

## 2. Kinnavy's eligibility for advancement

Of course Chiquita is only expected to advance expenses in a case where Kinnavy could ultimately be eligible for indemnification. In the case of a civil proceeding brought by a third party, such as this one, the New Jersey statute allows corporations to indemnify their agents against expenses and liabilities under two conditions: (1) the proceeding involves an agent "by reason of his being or having been...a corporate agent;" and (2) the "agent acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation." N.J. Stat. § 14A:3-5(2)(a). Chiquita argues that Kinnavy cannot satisfy either condition and, therefore, that Chiquita need not advance Kinnavy's expenses. The Court addresses these arguments in reverse order below. Then, the Court addresses a couple additional arguments Chiquita makes against advancement.

### a) Good faith

Chiquita argues that because Kinnavy emailed Del Monte's documents to herself, she will never be eligible for indemnification because she will not be able to show that she "acted in good faith and in a manner she reasonably believed to be in or not opposed to" Chiquita's best interests. However, as explained below, Kinnavy's good faith or lack thereof is not relevant at this stage.

The statute contains three subsections providing for indemnification. N.J. Stat. § 14A:3-5(2)-(4). Subsections 14A:3-5(2) and (3) of the statute empower corporations to indemnify against all expenses and liabilities if an employee acted in good faith and with the company's best interests in mind. Chiquita made this type of indemnification mandatory through its Certificate. The statute requires indemnification against expenses, on the other hand, "to the

21

extent that [the employee] has been successful on the merits or otherwise in any proceeding referred to in subsections 14A:3-5(2) and 14A:3-5(3) or in defense of any claim, issue or matter therein." *Id.* at § 14A:3-4. The plain language of the statute does not make entirely clear whether "any proceeding referred to" in the optional subsections simply means "any proceeding involving the corporate agent by reason of his being or having been such a corporate agent," or whether the other conditions listed in the earlier subsections, such as good faith, must be satisfied as well.

In *Green v. Westcap Corp. of Delaware,* 492 A.2d 260, 265 (Del. Super. 1985), the court interpreted the similar Delaware statute to mean that the mandatory provision did not incorporate the other conditions. This is a logical reading of the New Jersey statute as well. The language restricting subsections 14A:3-5(2) and 14A:3-5(3) to proceedings involving the employee "by reason of his being or having been" an employee serves as a descriptor for the type of proceedings covered by the indemnification proceedings. The additional "factual prerequisites" for indemnification on the other hand, such as good faith, are separate from this language and differ in the two subsections. *Green,* 492 A.2d at 265. The *Green* court concluded that the requirement that an employee succeed on the merits or otherwise in the subsection providing for mandatory indemnification takes the place of these "factual prerequisites." *Id.* The Court accepts this construction of the statute because, while another reading might also be possible, the statute's purpose suggests that an expansive interpretation is appropriate.

Accepting that a corporation must, in some circumstances, indemnify its employees regardless of whether they acted in good faith, the Court will not require Kinnavy to show good faith in order to obtain advancement. The Court's decision is supported by a "consistent line of authority upholding the contractual and statutory advancement and indemnification rights of

22

corporate officials charged with serious misconduct allegedly inspired by personal greed."
*Homestore*, 888 A.2d at 214 (quoting *Reddy v. Elec. Data Sys. Corp.*, No. CIV A. 19467, 2002
WL 1358761, *6 (Del. Ch. June 18, 2002)).

### b) By reason of Kinnavy's employment

Thus, in order to survive Chiquita's motion, Kinnavy must raise genuine issues of fact or
law only about whether she is involved in this lawsuit "by reason of" her employment by
Chiquita. Kinnavy will be successful if she can show a "nexus or causal connection between any
of the underlying proceedings...and [her] official corporate capacity" at Chiquita. *Homestore*,
888 A.2d at 214. For the purposes of deciding this issue, Del Monte's claims against Kinnavy
can arguably be broken down into two relevant categories. First, Del Monte alleged that by
working for Chiquita, Kinnavy violated a non-compete agreement. Second, Del Monte alleged
that Kinnavy committed a number of violations by emailing herself copies of Del Monte's files
when she resigned.

In its first argument that Kinnavy fails to meet the burden of showing the necessary
"nexus or causal connection," Chiquita relies on *In re Miller*, 290 F.3d 263, 268 (5th Cir. 2002),
to argue that the nexus must consist of more than Kinnavy's "mere status" as an employee. In
some respects, *Miller* presents a set of facts similar to the one before the Court. A company sued
its former employee and its competitor after the employee took documents and left to work for
the competitor. *Id.* at 266. The claims against the employee included misappropriation of
proprietary information and trade secrets, but it is unclear whether the original employer sued for
violation of a non-compete clause as well. *Id.* at 268. In that case, the court rejected the
argument that there was a nexus or causal connection requiring indemnification for an individual
"who is sued because he is an employee – but not because of his actions as an employee,"
finding no case law allowing indemnification "for the mere status of being a

23

corporate...employee." *Id.* The court determined that the former employer was really suing the employee for his actions in taking the documents, not for anything that he did with them. *Id.* Thus, the court reasoned, the fact that the employer's motivation in suing him may have been that he left to work for their competitor was irrelevant. *Id.*

However, the *Miller* court also recognized the legitimate concerns that its ruling might make it difficult to indemnify employees against claims from vindictive former employees regarding non-compete clauses and alleged trade secrets violations. *Id.* In addressing these concerns, the court pointed out that the right to corporate indemnification is necessarily judged on a case-by-case basis. *Id.* The employee in *Miller* had taken all of the documents before leaving the employment of his prior employer and a jury found that his new employer had no involvement in and did not profit from those actions. *Id.* Thus, despite the aforementioned concerns, the court had no qualms about denying the employee the right to indemnification in that case. *Id.*

In the instant case, Kinnavy's employment with one of Del Monte's chief competitors did not merely motivate Del Monte to sue – it was the subject of one of Del Monte's claims. Del Monte argued that simply by accepting employment with Chiquita, Kinnavy violated her non-compete agreement. Thus, this claim would seem to present exactly the set of facts about which the *Miller* court expressed concern. Moreover, Del Monte argued that Chiquita should also be held liable for employing Kinnavy. While the Court did dispose of that claim on summary judgment, the decision was based on the unenforceability of the agreement, not on Chiquita's lack of involvement, as in *Miller*. Thus, the Court finds that in this instance, Kinnavy's "mere status" as an employee was the reason for at least one of Del Monte's claims against Kinnavy, and rejects Chiquita's argument that this is never enough to establish the requisite nexus.

24

Del Monte's other claims require a different analysis. They are more analogous to the claims in *Miller* in that they are based on a great deal of conduct that Kinnavy engaged in separately from Chiquita, while she was still employed by Del Monte. Just as in *Miller*, Del Monte accuses Kinnavy of taking copies of Del Monte's documents for use outside of Del Monte while she was working there and of keeping, using, and distributing those documents after leaving the company. Chiquita argues that this is where the allegations end, and that the allegations concerning Kinnavy's actions are therefore just as unrelated to her employment with Chiquita as those of the employee in *Miller* were to his employment.

However, Del Monte's complaint alleges more than this. Del Monte alleges that Kinnavy not only took its documents, but that she used them to contact and solicit Del Monte customers on behalf of Chiquita. (1st Amend. Compl. ¶¶ 38, 41 & 42.) Moreover, Del Monte set forth two claims against Chiquita, each of which implied that Kinnavy's actions were tied in with her employment there. In the first claim, Del Monte alleged that Chiquita interfered with Del Monte's contracts with Kinnavy, including those requiring Kinnavy to keep Del Monte's information confidential. In the second claim, Del Monte alleged that Chiquita misrepresented that Kinnavy would not solicit Del Monte's customers as part of her work with Chiquita, knowing that this was not the case. The Court disposed of these claims on summary judgment, but not because of a finding that Kinnavy's use of Del Monte's information was unrelated to her employment at Chiquita. Instead, the Court ruled against Del Monte because some of its agreements were unenforceable, Chiquita had no knowledge of another, and Del Monte was unable to show reliance on Chiquita's alleged misrepresentations. *Del Monte*, 616 F. Supp. 2d at 824-27. Thus, unlike in *Miller*, where a jury had already determined that the employee's actions were taken in his personal, rather than his official, capacity, 290 F.3d at 268-69, there is still

some dispute as to whether Kinnavy's actions were committed on behalf of or because of her employment by or on behalf of Chiquita. The Court therefore rejects Chiquita's first argument.

In its second argument that Kinnavy has failed to show the requisite nexus, Chiquita focuses solely on Del Monte's claim that Kinnavy violated the non-compete clause. Relying on *Stifel Financial Corp. v. Cochran*, 809 A.2d 555, 562 (Del. 2002), Chiquita argues that employment contracts such as Del Monte's non-compete agreement involve personal, rather than professional, obligations. As a result, Chiquita argues, a claim based on the breach of such an agreement by an employee is not brought "by reason of" the employee's official status. In *Stifel*, a corporation succeeded on claims it brought against its former employee in an arbitration action pursuant to the terms of his employment agreement. *Id.* at 557. The claims sought to recover excess pay the employee refused to return and the amount due on a promissory note.[5] *Id.* at 557. The employee sought indemnification for the claims from his former employer's corporate parent. *Id.*

The fact that the employee sought indemnification against his former corporate parent does make *Stifel* a somewhat unique case. Normally, under both the Delaware and New Jersey statutes, a corporation may not, unless ordered by a court, indemnify an employee for a claim brought "by or in the right of" the corporation if the employee is found liable.[6] Del. Code tit. 8, § 145(b); N.J. Stat. § 14A:3-5(3). In *Stifel*, however, the lower court held that the arbitration action was not brought by or in the right of the corporate parent, the party from whom the former employee sought indemnification, because the subsidiary (the employer) filed the action. *Cochran v. Stifel Fin. Corp.*, No. Civ. A. 17350, 2000 WL 286722, *10-*15 (Del. Ch. Mar. 8,

---

[5] The action also included a claim for the violation of a non-compete clause, but the corporation withdrew that claim. *Stifel*, 809 A.2d at 557.

[6] Both statutes do provide an exception for indemnification pursuant to a court order. Del. Code tit. 8, § 145(b); N.J. Stat. § 14A:3-5(3).

2000). While the Delaware Supreme Court found the question of whether the lower court's ruling on this issue was correct to be moot on appeal, *Stifel*, 809 A.2d at 559, the ruling does highlight the fact that the case is based on a rather distinct set of facts which, had the Court ruled otherwise, would have provided an employee with a rare opportunity to receive indemnification from a parent corporation for funds he owed to its subsidiary.

In fact, it was precisely because of the absurdity of this potential result that the Court rejected the indemnification claim in *Stifel*. *Id.* at 562. Chiquita correctly points out that the Court based its decision on the fact that "[w]hen a corporate officer signs an employment contract committing to fill an office... he owes a personal obligation to the corporation." *Id.* (quoting the lower court). Thus, the Court found it "problematic to conclude that [a suit based on a breach of those obligations] has been rendered an 'official capacity' suit subject to indemnification." *Id.* However, the Court found such a conclusion problematic "[w]hen the [employer] corporation brings a claim and proves its entitlement to relief" because it "would render the officer's duty to perform his side of the contract in many respects illusory." *Id.*

In the instant case, the Court is not faced with a similarly absurd outcome if it allows for advancement. First of all, the absurd outcome in *Stifel* only comes about if the employee is found to be liable and that is not the case here thus far. Secondly, unlike in *Stifel*, allowing advancement in this case will not shift responsibility back onto the company to whom the obligation is owed, thus rendering the obligation illusory. Instead, the obligation will be shifted to a third party who contracted to take on just this sort of responsibility.

Indeed, the question the Court must answer is not whether Del Monte's claims against Kinnavy are brought by reason of her employment by Del Monte, but whether there is a nexus between the claims and her employment by Chiquita. Thus, the question of whether Kinnavy's

27

alleged obligations to Del Monte are personal or professional is not the focus of the Court's inquiry. Instead, the Court focuses on whether Kinnavy's alleged breach of those obligations is related to Kinnavy's employment by Chiquita. The Court finds that it is.

### c) Equitable argument

Chiquita's last argument regarding the merits of Kinnavy's application is an equitable one. Chiquita seems to base its argument on the premise that Kinnavy has conceded that an order of advancement is discretionary. Kinnavy has done no such thing and, as discussed above, the Court agrees with Kinnavy that Chiquita has actually agreed to mandatory advancement in any instance in which it is permitted by the statute. The Court is troubled by Chiquita's disingenuous assertion and might have dismissed its argument without further analysis.

Even accepting that the Court might consider this equitable argument, however, Chiquita fails to persuade. The company proceeds to essentially retrace its argument regarding Kinnavy's supposed lack of good faith and to question Kinnavy's ability to repay any advance payments should she be ineligible for indemnification. Obviously, the Court need not recount its reasoning on why Kinnavy's good faith or lack thereof is irrelevant. Nor will the Court spend much time addressing Chiquita's second concern – whether Kinnavy will be able to repay any expenses advanced by Chiquita. Chiquita expressly agreed to advance expenses to its employees upon receipt of an *unsecured* undertaking to repay those expenses. In fact, in a brief on another related motion, Chiquita cites *Fasciana v. Electronic Data Systems Corp.*, 829 A.2d 160, 175 (Del. Ch. 2003), for the proposition that an agreement to advance expenses is akin to assuming a credit risk in that the party agrees "to bear the risk of later non-payment on expenses for which advancement is owed in the event that the underlying conduct of [the employee] and/or the outcome of the matter ultimately disentitles [the employee] to indemnification." Despite the opportunity to place restrictions on that commitment, Chiquita decided against it.

#### d) Challenge to Kinnavy's expenses

Chiquita also challenges the amount of expenses that Kinnavy requests, arguing that it should have the opportunity to conduct discovery in order to challenge her claims. In her original application, Kinnavy reported that she had incurred $345,420.42 in expenses, and provided some documentation to support her claim. As of December 31, 2009, Kinnavy raised her request to $548,309.47. The Court recognizes that it would be inappropriate to force Chiquita to take Kinnavy's requests at face value. However, the Court also recognizes that it would be inefficient to allow the parties to fight a battle over Kinnavy's constantly changing request throughout the pendency of the litigation. Ultimately, at the indemnification stage, the parties will be afforded this opportunity. For the time being, the Court finds that at least a portion of Kinnavy's requests are reasonable. Actually, Chiquita seems to concede as much. Thus, the Court will award Kinnavy a portion of her requests, with the potential for awarding more as the litigation progresses. The Court realizes that this may result in an underpayment to Kinnavy (or, potentially, an overpayment). However, this compromise is the best resolution, taking both parties' interests into account. Before determining the proper award, however, the Court must also take Chiquita's second motion on the issue into account.

### C. Chiquita's motion to stay or apportion the advancement of expenses

Chiquita also filed a motion to stay or apportion any advancement of expenses. In its briefs, Chiquita repeats a number of its arguments for why Kinnavy is not entitled to advancement or why it is unfair to force Chiquita to advance expenses. Ignoring these redundant arguments, the Court only addresses Chiquita's new arguments that actually pertain to the issues of whether a stay or apportionment is appropriate below.

## 1. Request for a partial stay

Chiquita moves the Court to stay its advancement order insofar as it pertains to those of Del Monte's claims which the Court dismissed on summary judgment. Chiquita argues that there are two grounds for such a stay: (1) Kinnavy did not notify Chiquita of her demand prior to incurring the expenses related to the dismissed claims; (2) the dismissed claims are ripe for hearing on the ultimate issue of indemnification.

Chiquita cites no case law allowing for a stay of advancement in a situation such as this. The company does cite *Mitchell Co. v. Campus*, No. 08-0342-KD-C, 2009 WL 532246 (S.D. Ala. Mar. 3, 2009), for the proposition that a company need not advance expenses an employee incurred prior to making a demand for advancement. If this was actually the holding in *Mitchell*, and if it was applicable to the instant case, it seems that *Mitchell* would actually support a denial of Kinnavy's application, rather than a stay of any advancement. However, as noted above, it would be improper for Chiquita to reargue the issue of whether Kinnavy is entitled to advancement. Regardless, Chiquita misreads *Mitchell*. The case makes no general proposition about a company's duty to advance expenses without a timely demand. Instead, the *Mitchell* court clearly relied on the terms of the indemnification agreement involved, which explicitly required the indemnitee to "notify the Company within a reasonable time of all material claims" and limited the company's liability for expenses "to such expenses as shall have been incurred following notification." *Id.* at *3 & *16. In this case, neither the New Jersey statute nor Chiquita's Certificate contain similar provisions.

Lacking any foundation in statutory or case law for their first argument, Chiquita relies instead on simple logic. The company argues that because Kinnavy failed to make a timely demand for advancement, Chiquita was robbed of the opportunity to take over Kinnavy's defense and avoid the allegedly exorbitant expenses Kinnavy incurred. As Kinnavy points out,

30

however, Chiquita's vehement opposition to the idea that it is responsible in any way for Kinnavy's ultimate indemnification exposes a clear conflict in allowing Chiquita to take over Kinnavy's defense. *See Maryland Cas. Co. v. Peppers*, 64 Ill. 2d 187, 355 N.E.2d 24, 30-31(1976) (noting the "widely recognized" conflicts inherent in a similar relationship between an insured and an insurer disputing the insured's right to indemnification, and the insured's consequent right to be represented by independent counsel).

Chiquita's second argument is simply that the dismissed claims are ripe for a determination on the issue of indemnification and that advancement should thus be stayed pending discovery and a hearing on that issue. Kinnavy's response is essentially that the ultimate hearing on indemnification would normally take place after resolution of the case and of all appeals. The Court agrees with Kinnavy that it would be unwise to make the determination Chiquita seeks now. As Chiquita notes, in determining whether to stay an action, courts generally consider whether a stay will streamline a case and reduce the burden of litigation on the parties and the court. However, discovery and a hearing on indemnification solely on the dismissed claims at this point in the proceedings would delay and complicate the litigation. For this reason, the Court declines Chiquita's invitation to stay its advancement order.

### 2. Alternative request for apportionment

Chiquita's second request is that any advancement be apportioned according to the proportion of Del Monte's claims that relate to Kinnavy's employment by Chiquita. As an initial matter, the Court notes a clarification that Chiquita made in its reply brief. Chiquita states that it essentially seeks a determination of the share of Kinnavy's liability for which it will potentially be responsible at the indemnification stage of the proceedings. Chiquita argues that any advancement of expenses should be limited in proportion to that share. Chiquita seeks this determination regardless of whether Kinnavy's remaining expenses are to be advanced by Del

31

Monte or not. Thus, many of Del Monte's objections to the request are irrelevant. While Del
Monte is correct that Kinnavy has made no claims for advancement against Del Monte and that
there is nothing in the record that suggests that she can, the point is moot. Chiquita has no
standing to demand that Del Monte advance expenses, and despite any implication in its original
motion, its reply indicates that it makes no such demand. The company only seeks a reduction in
the amount of expenses for which it is responsible.

As noted above, the Court holds that each count aimed at Kinnavy in Del Monte's
complaint contains a sufficient causal connection or nexus with Kinnavy's employment by
Chiquita so as to require advancement pursuant to Chiquita's Certificate. Chiquita's attempts to
reargue that point on this motion fail as a procedural matter. However, the Court does note that
even when Chiquita adds some specificity to their original arguments, their efforts are not
fruitful. For instance, Chiquita argues that Del Monte's breach of fiduciary duty claim must by
definition be based on conduct that Kinnavy engaged in while she was still employed at Del
Monte. This argument is based on the false premise that fiduciary duties cannot survive the term
of one's employment. *See Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d
1263, 1265 (7th Cir. 1992) (holding that, under Illinois law, determination of whether a fiduciary
duty extended beyond term of employment is based on the underlying contract).

Chiquita's efforts to argue that claims related to Kinnavy's employment by Del Monte
cannot have the necessary nexus with her employment by Chiquita similarly bear no fruit. The
two concepts are not mutually exclusive. A claim against Kinnavy may simultaneously be
related to both her employment by Del Monte and her employment by Chiquita.

Nonetheless, the Court does recognize that each count contains a variety of allegations,
some of which are unrelated to Kinnavy's employment with Chiquita, but which might still

support a claim for relief. Thus, despite the fact that, as they are organized in Del Monte's First Amended Complaint, each count is causally connected with Chiquita's employment of Kinnavy, Chiquita may not be responsible for indemnification for all of the conduct for which Kinnavy is potentially liable. Kinnavy may be incurring some expenses defending claims about conduct unrelated to Chiquita and then may ultimately be found liable solely on the basis of that conduct. However, Kinnavy may also be liable on a theory which involves both the related and unrelated conduct. In that case, the causal connection test is met, and Chiquita might be required to indemnify.

These hypothetical results illustrate that it is nigh impossible for the Court to determine with mathematical certainty a fair and reasonable apportionment of the advancement of expenses at this time. Thus, for this reason, and because of the previously noted problems with settling any dispute over Kinnavy's bills, the Court will not award Kinnavy the full amount she requests. The Court orders Chiquita to advance Kinnavy $300,000 in expenses immediately. The Court may order additional payments in the future as Kinnavy incurs additional expenses.

### III. Indemnification and contribution

As noted above, Kinnavy and Chiquita both filed claims regarding indemnification. Kinnavy seeks indemnification from both Del Monte and Chiquita. Chiquita seeks indemnification or contribution from Del Monte. Below, the Court addresses Chiquita's motion to bifurcate Kinnavy's third-party complaint for indemnification against Chiquita from the liability portion of the case and Del Monte's motion to dismiss Chiquita's counterclaim for indemnification or contribution.

33

## A. Chiquita's motion to bifurcate[7]

Chiquita brings its motion to bifurcate pursuant to Rule 42(b), which states:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b). Tracking the language of the rule, courts consider the following circumstances when ruling on a motion for separate trials: (1) whether separate trials would avoid prejudice to a party or promote judicial economy; (2) whether separation would unfairly prejudice the non-moving party; and (3) whether separation would violate the Seventh Amendment. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). The rule gives the district court discretion. *Id.*

Chiquita argues that in this case, separate trials would both avoid prejudice to Chiquita and promote judicial economy. Its argument regarding judicial economy is simple. Essentially, it states that the issues involved in the indemnification claim are separate and distinct from the underlying liability issues and suggests that there are not many overlapping witnesses (though it provides nothing to support this second point). Its argument regarding prejudice is more substantial. Chiquita predicts that it will be prejudiced in a few ways. First, it predicts that it will suffer financial prejudice, arguing that it will incur unnecessary expenses actively participating in all stages of a trial that will, for the most part, focus on issues unrelated to the indemnification claim. Second, it predicts that it will suffer prejudice related to jury confusion

---

[7] Chiquita's motion to bifurcate originally requested dismissal of Kinnavy's contribution claim as the preferred form of relief. However, the basis for that request was that Kinnavy filed her claim as a cross-claim even though Chiquita had been dismissed as a party on summary judgment. Kinnavy re-filed her claim as a third-party complaint, however, so Chiquita now limits its request to bifurcation.

because Kinnavy will likely interject evidence of Chiquita's allegedly wrongful refusal to indemnify into the unrelated issue of her liability to Del Monte. Third, it predicts Del Monte will cause additional jury confusion through attempts to persuade the jury to find against Kinnavy by highlighting the promise of Chiquita's "deep pockets."

The Court is not presently persuaded by Chiquita's arguments. At this stage in the proceedings, the Court is unable to make a complete assessment of whether separate trials would promote judicial economy or avoid prejudice. The Court does note that Chiquita has not provided much support for its argument regarding judicial economy, however. On the other hand, Del Monte and Kinnavy both point out that one of Chiquita's main defenses to the indemnification claim involves the question of Kinnavy's intentions and good faith, a question which is also at the heart of Del Monte's claims. Given the procedural inefficiencies of conducting two separate trials, Chiquita's argument on this point is less than convincing.

The Court does agree that there is some potential for prejudice against Chiquita both in the way of financial prejudice and a risk of jury confusion due to Chiquita's "deep pockets." However, once again, the Court cannot at this point determine whether this prejudice outweighs the potential financial prejudice against Del Monte and Kinnavy that might result from conducting two separate trials that may involve some of the same issues. Nor has Chiquita persuaded the Court that this prejudice cannot be avoided through thoughtfully crafted jury instructions. In addition, the Court rejects Chiquita's additional argument regarding jury confusion. The argument itself is confusing, but Chiquita seems to be contending that Kinnavy will use evidence regarding Chiquita's refusal to indemnify her in order to avoid liability for Del Monte's claims. The Court does not understand how Kinnavy would do such a thing, but even if

35

she did, this would not seem to be prejudicial to Chiquita, but to Del Monte, who has not joined in Chiquita's motion.

For these reasons, the Court denies Chiquita's motion to bifurcate without prejudice, finding it to be premature.

### B. Del Monte's motion to dismiss

Finally, the Court addresses Del Monte's motion to dismiss Chiquita's counterclaim for contribution or indemnification. In its counterclaim, Chiquita brings three claims against Del Monte: Count II, for contribution pursuant to the Illinois Joint Tortfeasor Contribution Act (JTCA); Count III, for equitable contribution; and Count IV, for implied indemnification. Del Monte moves for dismissal of all three counts.

#### 1. Contribution under the JTCA

The JTCA provides for a right of contribution among "2 or more persons [who] are subject to liability in tort arising out of the same injury to person or property." 740 ILCS 100/2(a). Del Monte urges the dismissal of Chiquita's JTCA claim on three grounds: (1) neither Chiquita nor Del Monte is potentially liable to Kinnavy in tort; (2) Chiquita and Del Monte are not potentially liable to Kinnavy for the same injury; and (3) Chiquita's claim is untimely or not yet ripe.

Chiquita concedes that insofar as Kinnavy's claims against Chiquita seek indemnification pursuant to Chiquita's Certificate, Chiquita is potentially liable in contract, not tort, and that the JTCA is therefore inapplicable. However, Chiquita contends that Kinnavy's statutory indemnification claims against both parties fall within the reach of the JTCA. For support, Chiquita quotes *People of the State of Illinois v. Brockman*, 143 Ill. 2d 351, 574 N.E.2d 626, 634 (1991) as follows:

> In Illinois, there need not be actual tort liability in order to state a cause of action for contribution. The words "subject to liability in tort" have been interpreted to mean that the persons from whom contribution is sought are potentially capable of being held liable in a court of law or equity. The potential for liability depends merely upon their relative culpability in causing the same injury.

Chiquita also notes that the *Brockman* Court described a tort as a "breach of a noncontractual legal duty owed to the plaintiff, the source of which may be a statute as well as the common law." *Id.* (internal quotation omitted). Thus, Chiquita concludes, because Kinnavy's statutory grounds for relief against both companies are "noncontractual," they satisfy the JTCA's requirement that both companies be "potentially liable in tort" to Kinnavy.

Del Monte responds by citing case law for the proposition that in Illinois "[i]ndemnity derives from principles of contract." *See Van Jacobs v. Parikh*, 97 Ill. App. 3d 610, 422 N.E.2d 979, 981 (Ill. App. Ct. 1981); *Braman v. Woodfield Gardens Assocs.*, 715 F. Supp. 226, 229-30 (N.D. Ill. 1989) (same). Del Monte also argues that in each case cited by Chiquita for the proposition that statutory liability can suffice under the JTCA, the parties' underlying conduct was actually tortious. The Court thus turns to the three cases cited by Chiquita.

In the first case, *Brockman*, the plaintiff sued the defendant under common law and statutory theories for contaminating landfill property. 574 N.E.2d at 358. The defendant filed a claim for contribution pursuant to the JTCA against a third-party defendant. As noted above, the Court in that case defined a tort as a "breach of a noncontractual legal duty." 574 N.E.2d at 634. The *Brockman* Court also noted a "requirement...that an action for damages could lie for the wrong." *Id.* Finding that both parties had a statutory duty not to contaminate the property and could potentially be held liable for damages associated with breaching that duty, the Court held that they fit the JTCA's requirement of potential liability in tort regardless of whether the action sought damages. *Id.*

37

In the second case, *Giordano v. Morgan*, 197 Ill. App. 3d 543, 554 N.E.2d 810, 811-13 (Ill. App. Ct. 1990), the plaintiff sued a number of defendants after an automobile accident, including her insurance providers, her insurance brokers, and the uninsured owners of the other car. Her claims against the insurance companies and brokers were based not just on a failure to honor policies, but on a failure to properly procure and handle policies, leaving her in a position where she was arguably uninsured. *Id.* at 812. She entered into settlements with all of the defendants except the owners of the other car, from whom she obtained a jury verdict. *Id.* at 813. After trial, the owners obtained contribution from the other defendants under the JTCA when the court set off the judgment by the amount obtained through the earlier settlements. *Id.* The court held that even though the claims brought against some of the settling defendants sounded only in contract, they were still "potentially liable in tort" because "the theory under which the plaintiff sued the defendants was not dispositive." *Id.* at 814 (citing *Joe & Dan Int'l Corp. v. U.S. Fidelity & Guaranty Co.*, 178 Ill. App. 3d 741, 533 N.E.2d 912, 918 (Ill. App. Ct. 1988)). Instead, "the Contribution Act focuses...on the culpability of the parties rather than the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss." *Id.* (quoting *Joe & Dan Int'l*, 544 N.E.2d at 918). The court found all of the defendants to be sufficiently culpable to satisfy the requirement. *Id.*

Finally, in *Cirilo's, Inc. v. Gleeson, Sklar & Sawyers*, 154 Ill. App. 3d 494, 507 N.E.2d 81, 83 (Ill. App. Ct. 1987), the court also focused "on the culpability of the parties" rather than the theory of liability. The court noted that contribution among tortfeasors under Illinois law was based on the notion that "there is an obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone." *Id.* at 82-83 (internal quotations, brackets, and citations omitted).

38

Thus, despite the fact that the parties' duties to the plaintiff were statutory, the court held both parties to be "potentially liable in tort" because their conduct breached those duties and caused the plaintiff's injury.

Having analyzed the case law, the Court agrees with Del Monte on this point, though not for precisely the reasons articulated by Del Monte. The Court is persuaded in part by the fact that in Illinois, indemnity derives from principles of contract, *see, e.g., Van Jacobs,* 422 N.E.2d at 981; *Braman,* 715 F. Supp. at 229-30, but does not find this alone to be dispositive. The Court finds additional support for its conclusion in the cases described above, upon which Chiquita relies for support of the idea that the JTCA applies in actions that are not based in tort. While Chiquita is of course correct that the JTCA can apply in situations where the action is based on a statutory duty, rather than a tort theory, this does not mean that it applies here. Each of the cases above focuses on the shared culpability of the "tortfeasors." In each case, the plaintiff suffered an injury because the "tortfeasors" breached a duty. Here, Kinnavy has not even suffered an injury. Chiquita may argue that Kinnavy is the victim of vexatious litigation, but even if that is the case, then certainly Chiquita is not culpable since it did not file the suit. Chiquita is potentially responsible for indemnifying Kinnavy regardless of its culpability. Its responsibility stems from its employment of Kinnavy, not its culpability. Thus, its potential liability is much more akin to contractual, rather than tort liability, even if it results from a statute.

For a similar and related reason, Del Monte prevails on its second argument as well. The JTCA requires shared potential liability "arising out of the same injury." 740 ILCS 100/2(a). Since Kinnavy is not seeking recovery on an injury, but indemnification, Chiquita cannot meet the pleading requirements of an action under JTCA. Moreover, even if Kinnavy's expenses and liability were viewed as an injury, Chiquita clearly alleges that it did not cause that injury. As

noted above, culpability for the same injury is the concept that lies at the very heart of Illinois law regarding tortfeasor contribution.

For these reasons, the Court grants Del Monte's motion to dismiss Count II of Chiquita's counterclaim. Having done so, the Court need not address Del Monte's third argument on the issue.

### 2. Equitable Contribution

In Count III, Chiquita seeks relief under a common law theory of equitable contribution. However, at common law, such a claim must be based on "the compulsory payment by a joint obligor of more than his fair share of a common obligation." *Ruggio v. Ditkowsky*, 147 Ill. App. 3d 638, 498 N.E.2d 747, 750 (Ill. App. Ct. 1986). Del Monte argues that Chiquita's claim must fail because the two companies are not "joint obligors" and they share no "common obligation." For support, Del Monte cites to *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, No. 00C2441, 2001 WL 936159 (N.D. Ill. Aug. 15, 2001).

*Beneficial* was a complicated case that involved a number of parties. Two of the defendants had individual contracts regarding the performance of certain services with each of four cross-defendants and with one counter-plaintiff. *Id.* at *2. Each of those contracts contained an indemnification clause requiring the cross-defendant or the counter-plaintiff to indemnify the defendant for any losses "arising out of or in anyway related to that party's performance of services under this Agreement or in connection therewith." *Id.* When the defendants sought indemnification from the counter-plaintiff, the counter-plaintiff sought equitable contribution from the four cross-defendants. *Id.* The court found that the claims for equitable contribution failed to allege the existence of a common obligation, because the cross-defendants had not agreed to cover any of the defendants' liability arising out of their contracts with the counter-plaintiff. *Id.* The court contrasted that situation with one in which the parties'

40

"jointly agreed to assume each other's risk, such as where two or more insurers insure the same insured's risk." *Id.*

Chiquita responds by arguing that a common obligation can arise without an agreement between the jointly obligated parties, and can even arise out of different sources. In *Kudlicki v. MDMA, Inc.*, No. 05 C 2589, 2006 WL 1308617 (N.D. Ill. May 10, 2006), the case upon which Chiquita relies, the court did indeed note that the common obligation that forms the basis for an equitable contribution claim can arise from "agreement or statute." *Id.* at *5 (citing cases). Chiquita makes much of the point that *Kudlicki* thus makes clear that claims for equitable contribution can therefore arise outside of the context of co-insurers. *Id.* This much is true, and might be inferred from *Beneficial*, in fact. *See* 2001 WL 936159, at *2. However, the point is irrelevant because the case does not provide support for Chiquita's argument that each party's obligation need not arise out of the same source. The case also fails to provide grounds for disagreeing with or distinguishing the holding in *Beneficial*.

In fact, the Court finds *Beneficial* to be analogous to the case at bar. Whether by agreement or pursuant to a statute, Chiquita and Del Monte are both potentially liable for Kinnavy's indemnification. However, each company's responsibility is limited to claims that arise out Kinnavy's employment with that company. Similarly, each potential indemnitor's agreement in *Beneficial* was limited to losses arising out of the performance of services under the indemnitee's contract with that indemnitor. 2001 WL 936159, at *2.

The *Beneficial* court did not explicitly note whether the losses arising out of one contract ever overlapped with those arising out of another or whether that made a difference. Thus, the decision is not directly instructive on that issue. This court, however, sees no reason why the fact that there may be overlap between the claims covered by Chiquita's responsibility and those

covered by Del Monte's responsibility should necessitate a right of contribution. The parties'

obligations to Kinnavy arise from different sources. They are defined differently and their

definitions do not necessarily overlap. Chiquita has provided no authority for the proposition

that obligations that fit this description, when overlapping, constitute a "common obligation" for

purposes of the common law doctrine of equitable contribution. Thus, the Court will not

entertain claims by Chiquita that its independent obligation to indemnify Kinnavy might result in

a requirement that it pay more than its "fair share" of Kinnavy's expenses and liability. *See*

*Ruggio*, 498 N.E.2d at 750 (claim of equitable contribution must be based on claimant's

compulsory payment of more than its "fair share"). The Court therefore grants Del Monte's

motion to dismiss Count III of Chiquita's counterclaim.

### 3. Implied indemnification

Chiquita's final claim against Del Monte is brought under a theory of implied

indemnification. Chiquita concedes that the Illinois legislature, through the passage of the

JTCA, abolished much of the common law on implied indemnification. *See Amer. Nat'l Bank &*

*Trust Co. v. Columbus-Cuneo-Cabrini Med. Center*, 154 Ill. 2d 347, 609 N.E.2d 285, 287 (1992)

(citing *Allison v. Shell Oil Co.*, 113 Ill. 2d 26, 495 N.E.2d 496, 499-500 (1986)). However,

Chiquita argues that its claim is still viable under the prong of implied indemnification law left

untouched by the JTCA. Chiquita is correct that such a claim is viable between parties with

quasi-contractual relationships, such as in the context of vicarious liability. *Amer. Nat'l Bank*,

609 N.E.2d at 289. Chiquita also correctly notes that in order to recover under such a claim, "the

indemnitee must show that he or she has not acted wrongfully in any degree and that the parties

had the type of legal relationship which the law recognizes as giving rise to an implied promise

to indemnify." *Bethlehem Steel Corp. v. Chicago E. Corp.*, 863 F.2d 508, 520 (7th Cir. 1988).

However, Chiquita cannot show the existence of a quasi-contractual relationship which the law

recognizes as giving rise to an implied promise to indemnify. On the contrary, Chiquita and Del Monte are competitors and opposing parties in litigation. Chiquita's suggestion that the parties' reciprocal duty to avoid frivolous and vexatious litigation satisfies this requirement is thus nothing more than ironic given the preposterous nature of Chiquita's argument. The Court therefore grants Del Monte's motion to dismiss Count IV of Chiquita's counterclaim.

## *CONCLUSION*

Pursuant to the Court's January 20, 2010 order, the parties may file additional motions now that the Court has ruled on all of the motions currently pending. However, having now examined each of the parties' filings in detail, the Court must remark that all three of the parties to this lawsuit have been overly litigious. Some of their motions have been unnecessary or overzealous. Moreover, even when the motions themselves are legitimate, the parties seem to have taken to submitting every argument imaginable in support of their briefs, rather than exercising some discretion in favor of those arguments with some merit. The Court thus invokes the words of the Seventh Circuit and advises the parties to think twice before filing motions, so as to avoid the type of argument that gives motion practice a "deservedly bad name." *Davis*, 269 F.3d at 821

In summary, for the reasons stated above, the Court: (1) grants Del Monte's motion to dismiss Kinnavy's counterclaims in part and denies it in part; (2) grants Kinnavy's motion to voluntarily dismiss her class claims without prejudice, but denies it as to her individual claims; (3) denies Del Monte's requests for costs and fees; (4) denies Del Monte's Rule 12(f) motion to strike; (5) denies Chiquita's motion to strike; (6) denies Chiquita's requests for a stay; (7) grants Kinnavy's application for advancement with some limitations; (8) grants Chiquita's request for apportionment with some limitations; (9) denies Chiquita's motion to bifurcate without

43

prejudice, finding it to be premature; and (10) grants Del Monte's motion to dismiss Chiquita's counterclaims for contribution. Pursuant to its decisions regarding Kinnavy's application for advancement and Chiquita's request for apportionment, the Court orders Chiquita to advance Kinnavy $300,000 in expenses immediately. The Court may order additional payments in the future as Kinnavy incurs additional expenses.

IT IS SO ORDERED.

3/23/10

Dated

Hon. William J. Hibbler
United States District Court